# NATIONAL LABOR RELATIONS BOARD *v.* WARREN COMPANY, INC.

No. 27.   Argued October 20, 1955.—Decided December 12, 1955.

*David P. Findling* argued the cause for petitioner. With him on the brief were *Solicitor General Sobeloff, Theophil C. Kammholz* and *Dominick L. Manoli.*

*John Wesley Weekes* argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

On August 7, 1952, the United States Court of Appeals for the Fifth Circuit entered its decree enforcing in full an order of the National Labor Relations Board issued on June 30, 1950, against respondent herein directing it (1) to cease and desist from refusing to bargain collectively with District Lodge No. 46, International Association of Machinists, a labor union, as the exclusive bargaining agent of all its tool and die makers, machinists, etc., and from discouraging membership in the union; (2) to take affirmative action upon request to bargain collectively with the union as the exclusive representative of respondent's said employees and, if an understanding should be reached, to embody such understanding in a signed agreement; and (3) to post at its plant a notice to be furnished by the Regional Director of the National Labor Relations Board and signed by the officers of respondent agreeing to desist from certain unfair labor practices, and to bargain collectively with the union upon request as required in the order.   197 F. 2d 814.

Respondent had posted the notice and restored certain employees to their jobs as required by the order, but declined to bargain collectively with the union, although requested by the latter to do so on numerous occasions over a period of seven months, basing its refusal to do so on the ground that the union had lost its alleged majority status by reason of a turnover in personnel.   It demanded proof from the union that it represented a majority of the employees then employed in the bargaining unit.   The

union replied that its majority status had been determined by the Board and by the Court of Appeals in its decree of enforcement. Respondent never bargained collectively with the union, either before or after the decree, contending at all times that the latter did not have majority status, although in 1948 the employees had designated the union as their bargaining agent and the Board had found that respondent had avoided collective bargaining through its lack of good faith and because of its own unfair labor practices. This finding was not challenged by respondent and was adopted by the Court of Appeals in its enforcement decree of August 7, 1952. Respondent then filed a petition with the Board on January 27, 1953, requesting an election in the bargaining unit. Because of respondent's failure to remedy its unfair labor practice by good-faith bargaining with the union for a reasonable period, the Board sustained its Regional Director's dismissal of the petition.

On September 22, 1953, the Board filed its petition in the Court of Appeals, specifically setting forth the conduct of respondent showing its failure and refusal to comply with the court's decree enforcing the Board's order, and asking that respondent be required to show cause why it should not be adjudged in civil contempt. The Board also asked the court to institute a prosecution for criminal contempt against respondent. Respondent answered, claiming compliance with the decree except that since the decree of the court it had refused to bargain collectively with the union as the bargaining agent of its employees because for a long time the union had not represented its employees as such bargaining agent.

The Court of Appeals concluded that no case for a civil contempt order had been made out and dismissed the proceeding. The court held that, notwithstanding the prior entry of a decree directing respondent to bargain collectively with the union, respondent's compliance with

other provisions of the decree entitled it to refuse to bargain collectively since it had ascertained that even before the decree, because of a turnover in personnel, the union had lost majority status. The court stated that to hold respondent liable in contempt under these circumstances would do violence to its decree and to the Act rather than to vindicate them.

Because of the importance of the question in the administration of the National Labor Relations Act, we granted certiorari, 348 U. S. 958. Petitioner does not press here its prayer in the court below for an adjudication of criminal contempt.

In arriving at its decision purging respondent of contempt, the Court of Appeals stated that respondent had "complied fully with all the provisions" of its enforcement order; that it had "made an offer to bargain with the union;" that the union's alleged loss of majority status was "without fault" on the respondent's part; and that the Board took the position that respondent was required "to bargain indefinitely" notwithstanding the union's loss of majority status.

If we had so understood the record, certiorari would not have been granted, but we do not so understand it. We believe the facts are to the contrary in each instance.

The original order of the Board found not only that respondent for a period of four years after notification by the union of its majority status had refused to bargain with it, but had also used deliberate and flagrant unfair labor practices to deprive the union of its majority status. In its opinion enforcing this cease and desist order, the Court of Appeals stated:

"With commendable candor respondent's counsel has stated its position as follows:

" 'We have controverted the findings of fact of the Board in our Response, but in all fairness to this

Court we are constrained to admit that there is sufficient evidence, even though disputed, upon which to base the Board's order.' " 197 F. 2d 814.

The findings of both the Board and the Court of Appeals are, therefore, clear that there had been no willingness on respondent's part up to that date, August 7, 1952, to bargain with the union.

In its "Answer of the Respondent to the petition of the Board for adjudication in Civil Contempt and other Civil Relief," filed November 12, 1953, respondent alleged:

"As shown hereinbefore and hereinafter Respondent has refused to bargain collectively with the Union because it did not represent a majority of the employees."

There is nothing in the record to indicate that this situation has ever changed in the slightest respect, and this in face of the fact that the union has at all times been willing to bargain.

Neither does the record indicate that the Board insisted upon respondent's bargaining with the union indefinitely; on the contrary, it demonstrates that the Board has urged here and in the court below that respondent should bargain in good faith only for a reasonable length of time after designation of the union as the bargaining agency.

It cannot be said that respondent is "without fault," because the record is clear that at no time has respondent bargained in good faith with the union. It has met with the union but twice since 1948 and on neither of those occasions did it bargain.[1] It has avoided other meetings

---

[1] There was only one meeting after entry of the enforcement decree. At this meeting, on January 19, 1953, respondent stated that it was in doubt as to the majority status of the union and for that reason "hesitated" to bargain with the union on the matter of a contract. This position was confirmed in a letter dated January 20, 1953, in which respondent advised the union of its intention to petition the Board for a decertification election.

by evasion and refusal or failure to respond to a request therefor.

The sole question necessary for determination here is whether an employer who has been found guilty by the Board of unfair labor practices in refusing to bargain with a union designated as the exclusive representative of its employees and who has been directed to so bargain, is, after a decree enforcing the order and without remedying its unfair labor practices, legally justified in refusing to bargain with the union because it contends the union does not in fact have majority status in its plant, or must such employer bargain fairly for a reasonable length of time in accordance with the order to avoid an adjudication in civil contempt.

We believe that an employer in such circumstances cannot lawfully refuse to bargain; that he must do so for a reasonable time; and that for a failure to so bargain it is the statutory duty of the Court of Appeals on petition of the Board to adjudge him in contempt of its enforcement decree. To conclude otherwise would greatly weaken the administration of the National Labor Relations Act.

That Act contemplates cooperation between the Board and the Courts of Appeals both at the enforcement and the contempt stages in order to effectuate its purposes. It consigns certain statutory functions to each,[2] and where the Board has acted properly within its designated sphere, the court is required to grant enforcement of the Board's order.[3] The decree, like the order it enforces, is aimed at the prevention of unfair labor practices, an objective of the Act, and so long as compliance is not forthcoming that objective is frustrated. It is for this reason that Congress gave the judicial remedy of con-

---

[2] *United States* v. *Morgan*, 307 U. S. 183.

[3] *Labor Board* v. *Bradford Dyeing Assn.*, 310 U. S. 318.

tempt as the ultimate sanction to secure compliance with Board orders.[4]   The granting or withholding of such remedial action is not wholly discretionary with the court.[5]   This is true not only under the National Labor Relations Act but also under general principles of equity jurisprudence.[6]

It seems clear to us that in the light of these principles and the facts of this case, the court below exceeded the allowable limits of its discretion in denying relief to the Board and that its judgment must be reversed and remanded for proceedings in conformity with this opinion.

*Reversed and remanded.*

---

[4] *Labor Board* v. *Mexia Textile Mills,* 339 U. S. 563.

[5] *McComb* v. *Jacksonville Paper Co.,* 336 U. S. 187.

[6] *International Salt Co.* v. *United States,* 332 U. S. 392; *Union Tool Co.* v. *Wilson,* 259 U. S. 107; *Penfield Co.* v. *Securities and Exchange Commission,* 330 U. S. 585.