NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

E. L. DELL, Jr., Trading as Waycross Machine Shop, Respondent.

No. 18060.

United States Court of Appeals Fifth Circuit.

Nov. 23, 1962.

25. Williams v. Mulcahey, 6 Cir., 250 F.2d 127; Vlisidis v. Holland, 3 Cir., 245 F.2d 812.

Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul Elkind, Duane B. Beeson, Attys., N. L. R. B., Washington, D. C., for petitioner.

E. Kontz Bennett, Waycross, Ga., for respondent.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and JOHNSON, District Judge.

TUTTLE, Chief Judge.

This case came on for a hearing before the Court upon the Board's petition to adjudge respondent in civil contempt of this Court's decree of November 18, 1960, 283 F.2d 733, and respondent's answer filed on or about August 23, 1962. Respondent's answer was filed under oath, pursuant to a citation for civil contempt issued by this Court.

This Court's decree of November 18, 1960, required that the respondent take the following affirmative action designed to effectuate the policies of the Act:

"(b) Upon request, bargain collectively with International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, as the exclusive representative of all the employees in the certified unit with respect to rates of pay wages, hours of employment, and other conditions of employment, and if an understanding is reached, embody such understanding in a signed agreement."

The Board's petition alleges the respondent has failed and refused to bargain in good faith with the Union in the following respects: (1) Failing to produce adequate or accurate job classifications and incentive wage information upon request; (2) insisting upon the withdrawal by the Union of unfair labor practice charges as a condition of entering into a collective bargaining agreement; (3) refusing to produce fiscal information to support its claim that it was financially unable to grant a wage increase; (4) questioning the Union's majority status, insisting upon a Board representation election as an alternative to bargaining, and finally refusing to negotiate further with the Union on the alleged ground that the Union no longer represented a majority when respondent's own unfair labor practices had contributed to the Union's loss of majority; and (5) other acts and conduct indicating a studied desire to evade and avoid the terms of the Court's decree set forth above.

A judgment of contempt can, of course, be based only upon proven facts. Thus, to the extent that respondent's sworn answer disputes allegations contained in the Board's petition, the burden was on the Board to prove the facts that would justify the Court's determining that respondent had failed and refused to comply with the Court's order. Generally speaking, of course, a Court of Appeals is not adjusted to the conduct of an ordinary trial involving the taking of oral testimony by witnesses during the conduct of a regularly published calendar of appellate cases. Nevertheless, this Court recognizes that under the requirements of the National Labor Relations Act it must, on occasions, be prepared to conduct just such a hearing. Upon proper notice from the Labor Board arrangements will always be made to permit the Board to adduce such oral testimony as it may be advised is necessary to carry its burden of proof. In view of the denials by the respondent, it is apparent that as to all except Item 4 above, the Court can not now find respondent to have wilfully and intentionally violated its decree of November 18, 1960. As to Item No. 4, however, the response does admit certain basic contentions of the Board that require us to consider whether the law as announced by the Supreme Court in N. L. R. B. v. Warren Company, Inc., 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96, either requires or warrants this Court to enter a judgment finding respondent guilty of civil contempt.

While there is a sharp dispute as to the degree of good faith exhibited by both the respondent and by the representative of the Union at the several meetings, it is not disputed that after this Court's decree respondent and the Union resumed negotiations on November 12, 1960, and that meetings thereafter took place on December 3, 1960; January 7 and 21, 1961; February 13, 16 and 22; March 22 and 29; April 7, 13 and 14; June 14, 1961; January 11, 1962; and May 21 and 22, 1962, without agreement being reached upon the terms of a collective bargaining contract. This much, however, appears: On April 13, 1961, the Company tendered a complete contract to the Union, which rejected it, apparently principally on the basis of dissatisfaction with the seniority provisions; thereafter on May 21 and 22, 1962, following a paragraph by paragraph discussion of the April 13 contract, the representative of the Union suddenly announced that he would accept the contract as written; whereupon the Company stated that the prior offer to contract was not still open. In a letter to the labor negotiator the Company states what transpired and what its position was at that time. This letter was written in response to the Union's request that the respondent tell the Union what its position was:

"When you finally did report at the meeting you stated that you would wind up the matter quickly and stated that you hereby accepted the Company's last offer of April 13, 1961. You will recall that you were told that the Company had not made this as an offer because the seniority provision which had been acceptable April 13, 1961, was not acceptable on May 22, 1962. You recall that the meeting broke up with the request that we advise you what we would be willing to do.

"This is to advise you that there is a serious question in our mind whether you represent any employees of Waycross Machine Shop, and we can not see how Waycross Machine Shop would be required to work with you on a contract under which you did not represent any of the employees. This, it seems to us, would be against the Act in that the employees would be deprived of having someone represent them whom they had selected.

"Mr. Dell has received the request from his present employees that they did not desire to have you represent them, and under these circumstances we intend to file a petition with the Tenth Region of the

National Labor Relations Board requesting an election to ascertain whether or not you are the legal representative of his employees."

Thus, it appears that while bargaining sessions were still going on, the Union representative undertook to accept an offer made by the Company more than a year earlier to enter into a final written contract. While it may well be that the discussions had on May 21 and 22 made it plain that this April 13, 1961, draft was not still open for acceptance (as to which no proof has been furnished pro or con), when the Union purported to accept it as it stood, the Board contends there was an obligation on the part of the Company to do more than simply say that it was not acceptable on May 22, 1962, especially since "the meeting broke up with the request that [respondent] advise [the Union] what [respondent] would be willing to do." The next advice was a refusal to do anything because respondent did not believe that the Union any longer represented a majority of the bargaining unit.

If we are to assume the correctness of all of the contentions of the Board, which the Board's brief recognizes must be established by proof, then it would be clear that the Warren case would be authority for the proposition that respondent here could not cease negotiations until a reasonable time had elapsed following the last unfair labor practice in which it had indulged before being permitted to contest the representative status of the Union. The language of the Warren opinion which is significant here is the following:

"The sole question necessary for determination here is whether an employer who has been found guilty by the Board of unfair labor practices in refusing to bargain with a union designated as the exclusive representative of its employees and who has been directed to so bargain, is, after a decree enforcing the order *and without remedying its unfair labor practices*, legally justified in refusing to bargain with the union because it contends the union does not in fact have majority status in its plant, or must such employer bargain fairly for a reasonable length of time in accordance with the order to avoid an adjudication in civil contempt.

"We believe that an employer in such circumstances cannot lawfully refuse to bargain; that he must do so for a reasonable time; and that for a failure to so bargain it is the statutory duty of the Court of Appeals on petition of the Board to adjudge him in contempt of its enforcement decree. To conclude otherwise would greatly weaken the administration of the National Labor Relations Act." (Emphasis added.) National Labor Relations Board v. Warren Company, 350 U.S. 107, 112, 76 S.Ct. 185, 187, 188, 100 L.Ed. 96.

Here, as we have indicated, some 18 months had passed from the decree of this Court requiring the respondent to bargain in good faith. The Labor Board contends that it has never done so. Although it is undisputed that numerous bargaining sessions were held, respondent contends that the Union representative has never bargained in good faith, and that he had in fact abandoned the effort for months at a time. The Labor Board contends that financial data, payroll data and classification data were demanded during the course of the bargaining sessions, and that the data furnished by respondent were either insufficient or totally lacking as to some of the essential needs. However, the fact that the Union representative agreed to accept the Company's April 13, 1961, contract in toto on the occasion of the last bargaining session, at least seems to indicate that there was a factual issue as to whether all of such data was actually necessary to permit a successful negotiation. In the absence of any proof to the effect that respondent's actions subsequent to the commencement of the bargaining in November, 1960, constituted unfair labor practices, it would seem that 18 months would be

871

sufficient to constitute a "reasonable time" during which the respondent should be required under the Warren doctrine to continue efforts to arrive at a contract without being privileged to contest the status of the Union as representing a majority of the unit. Without such proof we cannot find that respondent was still in the position of the Warren Company which the Supreme Court described as "without remedying its unfair labor practices."

We are compelled to conclude, therefore, that the Board has failed to prove its allegations of civil contempt on the part of the respondent.

The order heretofore issued by this Court requiring the respondent to show cause why he should not be held in civil contempt of this Court for failing and refusing to comply with its decree of November 18, 1960, is hereby

Discharged.