**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Jacob VANDER WAL, d/b/a Superior Business Forms, Respondent.**

**No. 18204.**

United States Court of Appeals Ninth Circuit.

March 29, 1963.

Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul Elkind and Paul J. Spielberg, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Michael J. O'Brien, Spokane, Wash., for respondent.

Before HAMLIN, MERRILL and DUNIWAY, Circuit Judges.

PER CURIAM.

The National Labor Relations Board (hereafter the Board) petitions for an adjudication that respondent Jacob Vander Wal, doing business as Superior Business Forms, is in civil contempt of this court for having failed and refused to obey the decree of this court entered on November 8, 1962.

After a hearing had been duly held, the Board made its order dated June 8, 1962. The Board made findings that respondent had refused to bargain collectively with the Spokane Printing Specialties and Paper Products Union, Local 592, hereinafter called the Union, and ordered among other things that the respondent cease and desist from such action and do certain acts set forth in the order. Thereafter, the Board petitioned this court for an order of this court enforcing the Board's order.

Respondent did not file in this court any objection to the Board's petition for enforcement. Thereafter, on November 8, 1962, this court made its order and decree against respondent, enforcing the order of the Board which was dated June 8, 1962.

The decree of this court provided in part:

"It is hereby ordered, adjudged and decreed that Respondent Jacob Vander Wal * * * shall:

"1. Cease and desist from:

"(a) * * *.

"(b) Refusing to bargain collectively with respect to rates of pay, wages, hours of employment and other terms and conditions of employment, including union security, with the Union as the exclusive representative of its employees in the previously described appropriate unit.

* * * * * *

"2. Take the following affirmative action which the Board has found will effectuate the policies of the Act:

"(a) Upon request, bargain collectively with the Union as the exclusive representative of the employees in the above-described appropriate unit with respect to rates of pay, wages, hours of work, and other terms and conditions of employment, including union security, and embody in a signed agreement any understanding reached."

On February 11, 1963, the Board filed in this court a verified petition asking this court to adjudge respondent in civil contempt for disobeying and failing and refusing to comply with, and continuing to disobey and fail and refuse to comply with the decree of this court entered herein on November 8, 1962. In said petition the Board alleged in part as follows:

"4. Respondent has disobeyed and failed and refused to comply with, and continues to disobey and fail and refuse to comply with, said decree since entry thereof, by its failure to bargain collectively with the aforementioned labor organization (herein called the Union). More particularly, the Board shows this Court, as follows:

"a. After the unfair labor practice hearing in December 1961, the Trial Examiner submitted his Intermediate Report and Recommended Order on March 1, 1962. Therein he found that respondent had failed to bargain in good faith with the Union, the certified representative of his employees, had threatened to close the business rather than deal with the Union, and had denied full reinstatement to six strikers after they ended their unfair labor practice strike. The Trial Examiner recommended the conventional relief for these unfair labor practices, including an order that respondent should bargain with the Union, upon request, and 'embody in a signed agreement any understanding reached.'

"b. Upon issuance of the Trial Examiner's report respondent resumed negotiations with the Union with the assistance of Charles R. Lyon, a staff member of the Associated Industries of the Inland Empire, respondent's labor relations representative. After some weeks of bargaining, the Union advised Mr. Lyon by letter on April 26, 1962, that it accepted respondent's current contract proposal. On May 12, 1962, the Union submitted signed copies of the agreed contract to Mr. Lyon, asking that he execute them on behalf of respondent and mail them back. As agreed, the tendered contract provided that the Spokane Printing Specialties and Paper Products Union, Local 592, to whom the Union had delegated its bargaining responsibility, would be the bargaining agent for the employees in the unit, and was executed in the name of Local 592. The contracts were not returned. Instead, Mr. Lyon ad-

vised the Regional Director on June 4, 1962, that respondent refused to execute the tendered contract on the sole ground that some of respondent's employees had filed a decertification petition with the Board the preceding March, and notwithstanding that the Regional Director had dismissed the petition on April 10, 1962, as untimely filed, an action which the Board affirmed on May 9, 1962.

"c. The Board's decision and order, which adopted the Trial Examiner's report in the absence of objections, issued June 8, 1962. Pursuant to the Board's application for summary enforcement, this Court granted enforcement in full on November 8, 1962.

"d. Following entry of the Court's decree, the Union and the Board renewed their request that respondent execute the tendered contract and put it into effect. Respondent refused to do so.

"5. By failing to recognize and bargain collectively with the Union, and in particular by failing to execute and put into effect the agreement concluded in April 1962, respondent has disobeyed and failed and refused to comply with and continues to disobey and fail and refuse to comply with, the said decree of this Court, and thereby has been, is and continues to be, in contempt of this Court."

Upon the filing of said petition, this court issued an order to show cause to said respondent directing him to make answer to said petition under oath "specifically admitting or denying, or meeting by affirmative defense, each and every allegation of said petition;" and further ordered that said respondent appear before this court upon March 25, 1963, to show cause why respondent should not be adjudged in civil contempt of this court as prayed in said petition.

On March 7, 1963, respondent filed in this court a verified answer to said petition, but failed to deny therein the allegations contained therein in paragraph 4, a, b, c and d. His answer is one of confession and avoidance. He does not deny that he refused to execute the contract described in paragraph 4, b, but sets out that a petition for decertification was filed by his employees on March 23, 1962, and again on November 28, 1962, signed by a majority of his employees, and that the regional director for the Board dismissed each petition; and for that reason respondent has failed to sign the contract referred to above. He states in paragraph 13 of his answer: "That if the respondent signs the labor contract offered by the union he will thereby foreclose the employees from expressing their desires and will effectively force them to accept union representation against their express wishes."

He asks this court to find that he is not in contempt of this court's order.

At the hearing of the order to show cause before this court on March 25, 1963, respondent appeared personally and orally stated his position. He did not deny that he had failed to sign the contract mentioned in the petition, but stated that he now believes the majority of his employees do not desire to be represented by the union in question. We find that respondent's contentions are not sufficient to permit him to avoid a charge of contempt.

A similar situation was before the Court in N. L. R. B. v. Warren Company, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96. The Court there stated:

"The sole question necessary for determination here is whether an employer who has been found guilty by the Board of unfair labor practices in refusing to bargain with a union designated as the exclusive representative of its employees and who has been directed to so bargain, is, after a decree enforcing the order and without remedying its unfair labor practices, legally justified in refusing to bargain with the union because it contends the union does not in fact have majority status in

its plant, or must such employer bargain fairly for a reasonable length of time in accordance with the order to avoid an adjudication in civil contempt.

"We believe that an employer in such circumstances cannot lawfully refuse to bargain; that he must do so for a reasonable time; and that for a failure to so bargain it is the statutory duty of the Court of Appeals on petition of the Board to adjudge him in contempt of its enforcement decree. To conclude otherwise would greatly weaken the administration of the National Labor Relations Act.

"That Act contemplates cooperation between the Board and the Courts of Appeals both at the enforcement and the contempt stages in order to effectuate its purposes."

The respondent is adjudged in contempt of court.

█ This court should impose whatever sanctions are necessary under the circumstances to grant full remedial relief, to coerce the contemnor into compliance with this court's order, and to fully compensate the complainant for losses sustained.[1]

Accordingly, we direct respondent to purge himself of the civil contempt by taking the following steps:

1. Within fifteen (15) days, notifying the union in question in writing that respondent recognizes the union as exclusive representative of his employees for all purposes prescribed by the Act, including collective bargaining, as required by the decree of this court, and that he will upon written request of the union in question execute the agreement concluded in April, 1962, with Local 592, which agreement was executed and tendered to respondent on May 12, 1962.

2. If so requested by the union, executing such agreement within five (5) days of the receipt of such request.

3. Posting notices for a period of sixty (60) consecutive days at its plant in conspicuous places, including all places where notices to employees are consistently posted, stating—

a. that respondent has been adjudged in contempt of court for failing to comply with this court's decree;

b. that he has complied with the requirement of paragraphs 1 and 2 above; and

c. that he will not engage in the conduct proscribed by the decree herein.

4. Paying to the Board as costs of court an amount adequate to compensate the Board for its costs and expenses in the investigation, preparation, presentation and final disposition of the proceeding,—the amount to be determined upon proof submitted by the Board when these proceedings are finally concluded.

5. Filing a sworn statement with the clerk of this court and a copy thereof with the Board within twenty-five (25) days after the entry of this order, showing what steps have been taken by respondent to comply with the court's directions. In the event that the union makes the written request set forth in paragraph 2 hereof, filing a sworn statement with the clerk of this court and a copy thereof with the Board within five (5) days after the receipt of such written request, setting out whether respondent has or has not signed the contract mentioned in paragraph 2.

Upon the failure of respondent to make a satisfactory showing, this court will deal further with the matter by imposing

1. N. L. R. B. v. Nesen, 211 F.2d 559, 9th Cir., 1954; McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599; United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

upon respondent a compliance fine of $500 and a further compliance fine of $100 per day for each day of continued non-compliance, and by such other means as the court may direct.

The clerk will enter an order in accordance with the above opinion as directed.