**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GENERAL PRECISION, INC., Respondent.**

**No. 16132.**

United States Court of Appeals Third Circuit.

Argued April 4, 1967.

Decided July 13, 1967.

William Wachter, N. L. R. B., Washington, D. C., for petitioner.

David L. Benetar, Nordlinger, Riegelman, Benetar & Charney, New York City, for respondent.

Before McLAUGHLIN and GANEY, Circuit Judges, and NEALON, District Judge.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

This matter is before us on the Petition of the National Labor Relations Board for adjudication of respondent in civil contempt and for other civil relief.

It is charged by the Board that respondent has resisted, violated, disobeyed and failed to comply with our decree of October 28, 1965. That decree requires respondent:

"1. Cease and desist from:

(a) Dominating and interfering with the administration of the Hourly Employees Committee, or any successor thereto within the meaning of the Act, at Respondent's New Jersey plants, and assisting or contributing support to such Committee.

(b) In any manner, interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist a labor organization, to bargain collectively through representatives of their own choosing, to engage in concerted activities for the purposes of collective bargaining, or other mutual aid or protection, or to refrain from any or all such activities, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized by Section 8(a) (3) of the Act, as modified by the Labor-Management Reporting and Disclosure Act of 1959, provided, however, the provisions hereof shall not be deemed to abridge the Respondent's rights under Section 8(c) of the Act.

2. Take the following affirmative action which the Board finds will effectuate the policies of the National Labor Relations Act, as amended:

(a) Withdraw and withhold all recognition from the Hourly Employees Committee, or any successor thereto within the meaning of the Act, at Respondent's New Jersey plants as the exclusive representative of its employees for the purpose of dealing with the Respondent concerning grievances, wages, hours, or other conditions of work, and completely disestablish, within the meaning of the Act, said organization of its employees."

The decree followed the consented-to order of the Board of August 17, 1965. That order was itself based on a settlement stipulation between the parties dated July 16, 1965. Prior to the settlement, respondent in its New Jersey plants operated a grievance procedure in which the above named Hourly Employees Committee participated by assisting and representing employees concerned and by disposing of employees grievances as to labor disputes, wages, rates of pay, hours of employment and work conditions.

After respondent's consent to the Board's order and our decree, on August 23, 1965 it revised its said grievance procedure by introducing into it an Employee Counsellor Plan. Through this employees were offered the assistance and representation of Employee Counsellors who at all times have been and are hired and paid by respondent. These were assigned as management representatives to the New Jersey plants personnel departments. Two of them were former Hourly Committee members. This practice was presented by respondent as a smooth transition from the old to the new practice which would satisfy the employees' need for representation. The Employee Counsellors have assisted, counseled and represented large numbers of employees in the processing and presentation of grievances against respondent regarding wages, rates of pay, hours and other terms and conditions of employment. They have for the employees dealt with management about safety practices and other working conditions.

The Board charges that the Employee Counsellor Plan is a labor organization within the meaning of the Act and of

the decree and that it is a successor organization to the Hourly Employees Committee, within the purview of the decree and " * * * has been established and recognized and continues to be established and recognized, maintained, dominated and interfered with in violation thereof."

The Board also charges that respondent's pension plan has been administered by an equal number of representatives for management and for the employees called the Central Committee of Administration. Prior to the decree the employee members were designated by the Hourly Employees Committee. Since the decree these have been appointed by respondent directly. The Board therefore charges that the Central Committee is a labor organization and that its administration has been interfered with by respondent.

From all of the above the Board, alleging that respondent has and is violating the decree of this Court, asks that it be held in civil contempt.

Respondent contends that its employee counsellors are acting as clearly identified management personnel. It denies that its Employee Counsellor Plan is a labor organization and that it is a successor organization to the Hourly Committee. With reference to the Central Committee, the respondent now agrees to cease and desist from appointing any hourly employees to this committee and to remove any incumbent employee representatives forthwith.

Respondent on July 16, 1965 consented to the entry of an order by the Board requiring it to completely disestablish the Hourly Employees Committee. In the Board's order based on the agreement and in our decree of October 6, 1965 enforcing that order, appeared the following:

"Respondent General Precision Inc., its officers, agents, successors, and assigns, shall:

1. Cease and desist from:

(a) Dominating and interfering with the administration of the Hourly Employees Committee, or any successor thereto within the meaning of the Act, at Respondent's New Jersey plants, and assisting or contributing support to such Committee.

(b) In any manner, interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist a labor organization, to bargain collectively through representatives of their own choosing, to engage in concerted activities for the purposes of collective bargaining, or other mutual aid or protection, or to refrain from any or all such activities * * *.

2. Take the following affirmative action which the Board finds will effectuate the policies of the National Labor Relations Act, as amended:

(a) Withdraw and withhold all recognition from the Hourly Employees Committee, or any successor thereto within the meaning of the Act, at Respondent's New Jersey plants as the exclusive representative of its employees for the purpose of dealing with the Respondent concerning grievances, wages, hours, or other conditions of work, and completely disestablish, within the meaning of the Act, said organization of its employees."

Almost immediately following the Board's order, respondent established its Employee Counsellor Plan for employee grievances. Under it the employee handled the first step; for the three other steps he could request representation. He could choose as his counsellor "1. The Employee Counsellor assigned to his plant from the Personnel Department, or 2. An hourly employee within his plant and department, who, at that time, is not otherwise involved in any steps of this procedure." A company bulletin to the employees told them that the old H.E.C. grievance procedure was being revised "In compliance with the N.L.R.B. ruling, and for the purpose of having a

smooth transition, * * *." Respondent attached a copy of the Employee Counsellor Plan and stated "Employees should not hesitate to use this method of airing these problems nor should they hesitate to use one of the methods of representation."

At the start of the program, respondent appointed three employee counsellors, paying them weekly salaries of between $155 and $245. The following February a fourth counsellor was added. From the exhibits before us, on November 29, 1965 and January 24, 1966, respondent in its listings of open positions stated as follows:

"ADMINISTRATIVE:

EMPLOYEE COUNSELOR — PERSONNEL DEPARTMENT

Represent hourly employees in all aspects of employee relations. Counsels employees in areas of insurance, hospitalization, wage rates and job classifications. Represents hourly employees as a direct link with top management on working conditions, morale and safety practices. Knowledge of personnel practices, policies, and procedures necessary, knowledge of job analysis desirable.

Plant #1 Shift #1 (JPY Ext. 2916)"

In the first seven months of the plan, Employee Counsellors assisted in 52 of the 75 written grievances processed by the respondent.

■ By our decree respondent was ordered to cease its domination of and interference with the Hourly Employees Committee or any successor thereto within the meaning of the Act. It was further ordered to cease and desist from "In any manner interfering with, restraining, or coercing its employees in the exercise of their right to self organization * * *."

It is evident from the record that respondent's Employee Counsellor Plan is in reality merely a careful continuation of its determined effort to dominate and interfere with its employees' right to self organization. The labeling of the Counsellors as "management personnel" in no way offsets their avowed purpose of dealing with management on behalf of the employees. Respondent's written representations to its employees respecting its Counsellors stresses that "Their chief function is to serve as direct lines to management, representing the employees in all matters of Company policy, information and possible grievances." The Counsellor method under which the respondent's Counsellors handled over two thirds of the employees' grievances in its first seven months functioning, was pressed upon the employees by respondent as having been instituted "to insure effective handling of employee problems." Its stated purpose was given "to review all complaints thoroughly, quickly and fairly."

Respondent's letter of August 18, 1965 to all hourly employees directly after the Board's disestablishment of the Hourly Employees Committee puts sharply into focus its opposition to unionization of its employees since 1951 and is a patent endeavor to soften the impact of the reasons for the Board forcing the disestablishment of that Committee. It baldly states that its present practices, etc. "will remain in effect except that the procedures will be revised to provide for grievance assistance and communication through channels other than the now dissolved Hourly Employees Committee." It was shortly thereafter that the Counsellor Plan was installed. Section 2(5) of the Act defines a labor organization as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work." The participation of the employees is undeniable and respondent is in complete control of the program which is its own creature, subject to its wishes. What it has resulted in is a repetition of the identical violation of the Act which resulted in the Board's order and our enforcement decree in this very situa-

tion. Respondent is once more dominating the sole organization available to its employees with respect to their entire relationship to their employer including the handling of their grievances. In so doing respondent as the employer and through its Counsellors representing the employees is affirmatively going against the letter and spirit of the Act. It has proceeded thus deliberately on the theory that it had overcome the factual and legal hazards of its Hourly Employees Committee tactics. It follows that in its present maneuver respondent is far more grievously at fault than the first time. Its offense is clear interference with the employees' organizational rights and with the Counsellor Plan which latter we find to be the successor to the original Committee.

We are at a loss to understand the purpose of arguing the conditional closing of the proceeding by the Board. As was specifically noted in the latter's letter this was done first, because up to that date, November 1, 1965, there had been no reported violations by respondent and second, it "was conditioned upon continued observance of said Order and Decree." It was after November 1, 1965 that violations were reported and that the Board ascertained that these were true in fact.

Respondent's next point is titled "The New Charge * * *." Under this it contends at great length that no evidence exists that respondent failed to disestablish the H.E.C. or that its Counsellor Plan is the successor of H.E.C. and is in turn dominated by respondent. Respondent did formally disestablish its H.E.C. Even while in the process of so doing it was developing its Plan and what it hoped would be a smooth transition over to it from H.E.C. We are satisfied that the Board's finding that the respondent's current plan is a successor labor organization to its H.E.C. and of the same ilk, is founded upon overwhelming evidence on the whole case. The assertion on behalf of respondent that the unlawful conduct now disclosed by the Board is unrelated to the unfair labor practices found by the Board in its order and by this Court in its decree, is without merit. That unlawful conduct is well within the scope of that decree's paragraph 1(a) which with the preamble to the decree reads:

"The National Labor Relations Board having on August 17, 1965, issued an Order against Respondent, General Precision, Inc., its officers, agents, successors, and assigns and the parties having stipulated that this Court or any other appropriate court may, upon application by the Board, enter a decree enforcing said order, and this Court having considered the same, it is hereby

ORDERED, ADJUDGED AND DECREED that the Respondent, General Precision, Inc., its officers, agents, successors, and assigns, shall:

1. Cease and desist from:

(a) Dominating and interfering with the administration of the Hourly Employees Committee, or any successor thereto within the meaning of the Act, at Respondent's New Jersey plants, and assisting or contributing support to such Committee."

It is also definitely covered by the intentionally broad language of 1(b) where it states:

"(b) In any manner, interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist a labor organization, to bargain collectively through representatives of their own choosing, to engage in concerted activities for the purposes of collective bargaining, or other mutual aid or protection, or to refrain from any or all such activities, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized by Section 8(a) (3) of the Act, as modified by the Labor-Management Reporting and Disclosure Act of 1959, provided, however, the provisions hereof shall not be deemed to abridge the

Respondent's rights under Section 8 (c) of the Act."

Both paragraphs in their cease and desist mandates plainly prohibit respondent's current move which latter is obviously to avoid the impact of the decree upon its employer control. What we are dealing with here is no new charge or new activity on the part of the employer. It is the same old hard core opposition to yielding its grip on the organizational and all other activities workwise of its employees. It is suggested that this is disguised. If so the disguise is just about as effective as the so called clothes of the Emperor.

Respondent in questioning the successorship of the Plan to the H.E.C. cites N. L. R. B. v. O. E. Szekely & Associates, 259 F.2d 652, 654 (5 Cir. 1958). The term "successor" was used there in a quite different context. Nevertheless the successorship of respondent's Plan to its H.E.C., under our glaring facts, would not be contrary to the Szekely concept. This is made apparent by respondent's acceptance of the definition of "successorship" by Judge Kalodner for this Court in N. L. R. B. v. Landis Tool Co., 145 F.2d 152, 156–157 (3 Cir. 1944). The test of successorship there used was, a strong "appearance of continuity and relation between the preceding illegal organization and the later organization." Applying that test to the Plan, beyond question it is the successor of H.E.C.

■ We are much impressed with the Board's criticism of respondent's present position in the light of its deliberate consent to the cease and desist order. It suggests that as a minimum the Board has the authority to prevent respondent repeating its illegal conduct in the substantially identical circumstances, this time with the Counsellor Plan. N. L. R. B. v. Ochoa Fertilizer Corporation, 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). Our upholding of this petition under the facts is certainly within our discretion. See N. L. R. B. v. Warren Co., Inc., 350 U.S. 107, 113–114, 76 S.Ct. 185, 100 L.Ed. 96 (1955). We find no reason arising out of the petition for returning the case to the Board for a second and totally uncalled for hearing. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 194–195, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

■ Finally, we have the charge by the Board that respondent violated our decree by interfering with the operation of the Administration Committee of respondent's pension plan. The cease and desist suggestion of respondent does not concede its unfair labor practice. It does fail to offer any meritorious defense to the Board's complaint. As we see it, this Committee is a labor organization within Section 8(a) (2) of the Act. There are two employee representatives on the Committee, both appointed by respondent. The Committee, including its employee members, passes upon the eligibility of employees for benefits under the pension plan, upon suggestions regarding the plan, all in conjunction with respondent. This plan is financed solely by respondent. Despite this and the element that the final decision on pension plan affairs is with respondent such Committee is a labor organization under Sections 2(5) (8), 8(a) (2) of the Act, 29 U.S.C.A. §§ 152(5) (8), 158(a) (2). See N. L. R. B. v. Jas. H. Matthews & Co., 156 F.2d 706, 708 (3 Cir. 1946).

In all of the above mentioned transactions the employee members of the Committee deal with the employer who had originated the plan and who dominates the Committee. We find that the operation of the Administration Committee is contrary to the Act and that respondent has violated our decree by interfering with the function of that Committee.

From respondent's admissions in its answer and its letters, bulletins and publications which are before us, there are no substantial factual questions in dispute and as we have above found, no necessity for a hearing.

From all of the facts and the apposite law we are convinced that respondent

has wilfully violated the consent decree of this Court in this case in the respects above indicated and in so doing is guilty of civil contempt. The Board is requested to submit a proposed order promptly.