NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BETTER VAL–U STORES OF MANS-
FIELD, INC., Respondent.

No. 509, Docket 32009.

United States Court of Appeals
Second Circuit.

Argued June 4, 1968.

Decided Sept. 10, 1968.

WATERMAN, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order of November 4, 1966, reported at 161 N.L.R.B. 762 (1966) that Better Val-U Stores of Mansfield, Inc., respondent, had violated §§ 8(a) (1) and (3) of the National Labor Relations Act. It ordered respondent to cease and desist from the unfair labor practices found, or from in any other manner interfering with, restraining, or coercing employees in the exercise of their statutory rights, to reinstate with back pay an employee found to have been dismissed because of her union activity, to post notices, and to bargain collectively, if requested to do so, with Food Handlers Union, Local 371, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO, as the union exclusively representing its employees. We grant enforcement of the Board's order except that portion of it requiring the employer to bargain with the named union.

The Board found the following facts: Respondent opened a new supermarket on November 3, 1965. Prior to that date it hired and trained employees for three weeks, including Brenda Dossat, an experienced cashier. Shortly after the store opened Dossat, at the request of several of the employees, contacted the Food Handlers Union, obtained authorization cards, and began distributing them to the other employees. About one week later, employee Lloyd Martin had a conversation with his supervisor, Joseph Lobe, Jr., during which the latter said that respondent's president, Harry Bokoff "would never let the union in the store anyway." On December 8, Dossat, an admittedly above average cashier, was summarily discharged for her union activities. By that date among the 60 employees there the union had 34 validly executed authorization cards in its possession. On December 9, a representative of the union called Bokoff and informed him that the union represented a majority of the employees. Bokoff re-

Fred R. Kimmel, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Washington, D. C., for petitioner.

Andrew Brand, Charles Suisman, Suisman, Shapiro, Wool, Brennan & Gray, New London, Conn., for respondent.

Before WATERMAN and FEINBERG, Circuit Judges, and ZAMPANO, District Judge.*

---

* Of the District of Connecticut, sitting by designation.

sponded by commenting, among other remarks, that the employees were not eligible for union membership and that many of them would not be retained. He nevertheless agreed to meet with the union on December 14.

A day or two after that conversation, employee Frances Chesko, acting as a representative of several of her coworkers, spoke with Personnel Manager Zulka to check on the security of their jobs. Zulka responded that their jobs were safe as long as they "didn't walk out with any union man or [have] anything to do with the union," or go out on strike. He added that the store would be closed "before they would let a union in" and that in a short time he would give raises, also mentioning "something about vacations and pay." On December 12, several of the employees went to a union meeting in which they told union representatives of this conversation, that Dossat had been discharged, and that, as a result, there was great fear and apprehension among the employees concerning unionization. Acting on this information the union representative then met with the president of the local, they decided that it would be futile to meet with Bokoff on December 14, and on December 17 they filed their charges of unfair labor practices with the Board without ever meeting with Bokoff.

On the basis of these findings of fact the Board concluded that respondent had violated § 8(a) (1) of the Act by threatening employees with reprisals for union activity, by promising benefits for refraining from union activity, and by statements indicating that it would be futile for employees to join the union. The Board also found that respondent violated § 8(a) (1) and § 8(a) (3) of the Act by discharging Brenda Dossat because of her union activities.

The evidence relied upon by the Board in support of its findings is not overwhelming. In certain respects the Board's findings differ from those of the Trial Examiner. See 161 N.L.R.B. 762, 763–764 (1966). However, these differences are the result of differences of opinion concerning inferences that might be drawn from certain underlying facts, not the result of differences over the facts themselves. Therefore, the sum of the differences between the findings of fact the Board found and those the Trial Examiner found is but one more factor in the whole record to be weighed in determining the substantiality of the evidence, not a factor to be given the preponderant significance to which the sum of differences regarding witness credibility might be entitled. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 496–497, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Compare NLRB v. Coletti Color Prints, Inc., 387 F.2d 298 (2 Cir. 1967) with Rocky Mountain Natural Gas Co. v. NLRB, 326 F.2d 949 (10 Cir. 1964); NLRB v. Dal-Tex Optical Co., 325 F.2d 78 (5 Cir. 1963); and NLRB v. Porter County Farm Bureau Coop. Ass'n, Inc., 314 F.2d 133 (7 Cir. 1963). Bearing in mind that only this limited significance may be given to this conflict between the inferences drawn by the Board and those drawn by the Trial Examiner, we cannot say that there is not substantial evidence "on the record as a whole," Universal Camera Corp. v. NLRB, supra, 340 U.S. at 490, 491, 71 S.Ct. at 466, to support the Board's findings, and therefore the Board's findings and conclusion that respondent committed the alleged unfair labor practices may not be overturned by us.

The question whether the remedies the Board has ordered are proper ones for us to enforce remains for consideration. To require an employer to reinstate an employee with back pay, to cease and desist from further unfair labor practices, and to post appropriate notices are proper and accepted remedies for violations of Sections 8(a) (1) and 8(a) (3). See, e. g., NLRB v. A. P. W. Products Co., 316 F.2d 899 (2 Cir. 1963); NLRB v. Firedoor Corp. of America, 291 F.2d 328 (2 Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 242, 7 L.Ed.2d 136 (1961). Accordingly, to this extent we grant enforcement of the Board's order without

further comment. However, the Board's imposition of a bargaining order where no violation of Section 8(a) (5) was found to have occurred is a more troublesome matter. We believe that a bargaining order cannot be justifiedly supported here and therefore we remand the case to the Board for the purpose of having it order a Board-supervised election after a reasonable passage of time.

■ The controlling test in this circuit as to whether a bargaining order is appropriate in a situation where there was no finding of a refusal to bargain by the employer in violation of § 8(a) (5) of the Act was announced by Judge Anderson in NLRB v. Flomatic Corp., 347 F.2d 74 (2 Cir. 1965). There the court called a bargaining order "strong medicine" because by dispensing with the necessity of a prior secret election, it creates "a possibility that the imposition of such an order may unnecessarily undermine the freedom of choice that Congress wanted to guarantee to the employees, and thus frustrate rather than effectuate the policies of the Act." Id. at 78. The court went on to add that though it is possible, absent a specific refusal to bargain, that a bargaining order might appropriately be made to restore the status quo ante as represented by a card majority it should only be done "where the employer's conduct has been so flagrantly hostile to the organizing efforts of a union that a secret election has undoubtedly been corrupted as a result of the employer's militant opposition." Ibid. See Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L. Rev. 38 (1964). Although Judge Hays in his dissent in Flomatic strongly urged that the judgment of employer interference was peculiarly within the area of the Board's expertise, Id. at 80, a view since adopted by the District of Columbia Circuit in United Steelworkers of America, AFL-CIO v. NLRB, 126 U.S.App.D.C. 215, 376 F.2d 770, cert. denied, sub nom. Northwest Engineering Company v. National Labor Relations Board, 389 U.S. 932, 88 S.Ct. 297, 19 L.Ed.2d 285 (1967), we feel compelled by the facts in our case to follow the majority view in Flomatic.

■ Though we agree with the Board that the employer here committed several unfair labor practices, we are not convinced that he waged a campaign that was "so flagrantly hostile" to the union that it is clear that both a secret election or an attempt to bargain with him would have been futile. The entire case against respondent consists of the discharge of one employee prior to the time respondent was notified that the union had authorization cards for a majority of employees in the unit and of two conversations between supervisory personnel and several employees, one conversation occurring before notification of the authorization card majority and one afterward. These events fall far short of the transgressions, for example, in J. C. Penney Co. Inc. v. NLRB, 384 F.2d 479 (10 Cir. 1967), in which the Tenth Circuit enforced a bargaining order where there had been no § 8(a) (5) violation. There (1) a supervisory representative of the employer held private interviews with employees encouraging them to withdraw from the union and threatening economic reprisals, and (2) prior to Board action on an election petition filed by the union, the employer granted wage increases to all the employees except two newly hired ones.

Similarly, in *United Steelworkers*, supra, where the District of Columbia Circuit chose to follow the minority view in *Flomatic*, the employer also engaged in a much more extensive anti-union campaign consisting of the institution of a new health and accident insurance plan one week prior to a representative election; "grievance meetings" with several groups of employees with the result that new policies regarding work assignments, overtime, and availability of parts were announced; granting of overtime to stockroom employees on the two Saturdays preceding the election; delivery of an anti-union speech in a

privately rented movie theater the day before the election; and granting of pay bonuses after the election but while the Board was considering objections to the election and the possibility existed that a second election would be directed.

There was no such widespread employer campaign here. Indeed, were we to hold that a bargaining order was proper in this case it would be close to creating a *per se* rule that a bargaining order could be imposed after any improper discharge of a major union organizer becomes known to the employees. This is especially true in light of the fact that the union makes no claim here that its majority was dissipated because of the employer's misconduct. Nor does there appear to be any reason why, at the very least, the union could not have endeavored to bargain with the employer and to have attempted to effect an informal resolution at that time of any claimed improprieties such as the discharge of Dossat. This is not to say that the union should be penalized for choosing to pursue its remedies before the Board. However, it is entitled to no greater relief than those charges warrant; and, as we observed above, the unfair labor practices charged and proved in this case are considerably less extensive than the unfair practices charged and proved in the few cases where there had been no refusal to bargain violative of Section 8(a) (5) and yet a bargaining order has been imposed by the Board and sustained by the courts.

■ Additional factors we have considered in deciding not to enforce the Board's bargaining order here are respondent's claims that a second union, Retail Employees' Union Local 919 R.C. I.A., is presently engaged in an organization campaign among its employees, and that only four of the 34 employees whose authorization cards in the charging union were validly signed and timely submitted are still in its employ. There is no claim here of a connection between the second, rival union and the employer as was claimed in International Association of Machinists v. NLRB, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940). Moreover, there was no charge made here by the charging union, but only a Board conjecture, that the respondent's unfair labor practices actually caused the dissipation of the union's authorization card majority. We are aware that a union's loss of majority status is not a sufficient ground for refusal to enforce a Board order that the employer bargain with that union. NLRB v. Warren Co., 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96 (1955); Franks Bros. Co. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); International Association of Machinists v. NLRB, supra. Compare NLRB v. Stow Manufacturing Co., 217 F.2d 900 (2 Cir. 1954), cert. denied, 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751 (1955) and NLRB v. Adhesive Products Corp., 281 F.2d 89, 92 (2 Cir. 1960) (Friendly, J., dissenting), with NLRB v. Adhesive Products Corp., supra (majority opinion), and NLRB v. National Licorice Co., 104 F.2d 655 (2 Cir. 1939), modified and affirmed, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940). However, it is significant that though the attrition here of employees who originally signed authorization cards occurred during the long period between the filing of the unfair labor practice complaint and the imposition of the bargaining order, there is no evidence in the present case that there is any inferable causal relation between the employer's unfair practices and this dissipation in union membership. The developments in this case demonstrate the vice of imposing a bargaining order long after the occurrence of unfair labor practices that are not refusals to bargain. The employees affected by the presently issued bargaining order are those currently at work and they should not be deprived of their freedom of choice among competing unions without clearer evidence of the impracticality of an election to be held now, or of evidence that the employer refused to bargain with the representatives of Local 371 at an earlier date. We should not "un-

necessarily undermine the freedom of choice that Congress wanted to guarantee to the employees." NLRB v. Flomatic Corp., supra, 347 F.2d at 78. Cf. Colecraft Mfg. Co. v. NLRB, 385 F.2d 998, 1008 (2 Cir. 1967). The best course to be followed now to preserve the employees' freedom of choice would be to hold a Board supervised election.

We grant enforcement of all portions of the Board's order except that part requiring respondent to bargain with Food Handlers' Union, Local 371, and remand to the Board so that a Board supervised election may be had in the appropriate bargaining unit within a reasonable period of time.