**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Marcellus S. MERRILL and Geraldine R. Merrill, Co-Partners, d/b/a Merrill Axle and Wheel Service, Respondent.**

No. 9424.

United States Court of Appeals Tenth Circuit.

Aug. 12, 1969.

Rehearing Denied Sept. 18, 1969.

John Irving, National Labor Relations Board, for petitioner.

Earl K. Madsen, Golden, Colo., for respondent.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The National Labor Relations Board petitioned this court to adjudge respondents, Marcellus Merrill and Geraldine Merrill, d/b/a Merrill Axle and Wheel Service, (hereinafter called respondent), in civil contempt for refusing to comply with a decree of this court. The decree, entered on February 15, 1968, enforced the order of the Board.[1]

The Board order sustained the trial examiner's rulings and adopted his findings, conclusions and recommendations. The trial examiner found interference, restraint and coercion of employees in their efforts to unionize, and refusal to bargain with the union.

Although the union requested the respondent to meet and negotiate after the decree in *Merrill,* supra, negotiations were postponed until April 30, 1968. On that date respondent filed a representation petition requesting an election to determine the union's majority status alleging that respondent in good faith doubted the union's status as majority representative of the employees. The petition was dismissed because respondent had failed to comply with the decree above referred to.

Thereafter, on May 10, 1968, the first meeting between respondent's representatives and the union was held. The meeting concluded that day without an agreement. The union made several requests for daily negotiations which were refused by respondent for various reasons. On July 1, 1968, the union was advised that respondent would no longer recognize it as the authorized agent of the employees for the reasons stated in the representation petition of April 30, 1968. Thereafter, on October 7, 1968, the Board filed its petition for adjudication in civil contempt.

Respondent contends the Board violated its clear statutory duty in summarily dismissing the election petition of April 30, 1968. It is further contended the sole test in this proceeding is whether respondent had a good faith reason to doubt the union's continued majority status.

Union authorization is based upon cards executed by employees on or before May 14, 1965. This court set forth the contents of the cards, found that they spoke clearly for themselves and were unambiguous.[2]

This court further concluded:

"The record does not support the contention that Mr. Merrill had a good faith doubt of the Union's majority on May 14th [1965]. On that day he was shown 14 photo-copies of union authorization cards and, checking with his bookkeeper, he found 23 employees in the unit. He never again raised the majority question and there is no evidence that he then had any suspicion that any cards had been obtained by fraud or coercion. On his own testimony the reason for his refusing to bargain was that he would not do so until the Union had organized his competitors. This, of course, is not a valid reason." [3]

The question of "good faith" doubt, relates itself to the period of time after the court entered its enforcement decree February 15, 1968. The reason for the limited period is the determination of this court in *Merrill,* supra, supporting the Board's order finding a § 8(a)(1) and § 8(a)(5) violation of the National Labor Relations Act.

N.L.R.B. v. Gissel Packing Co.[4] settled the conflict among the circuits regarding an employer's duty to bargain under

1. N. L. R. B. v. Merrill, 388 F.2d 514 (10th Cir. 1968).

2. *Id.* at 519.

3. *Id.* at 520.

4. 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (June 16, 1969).

§ 8(a) (5) based upon card authorization. This circuit had approved card authorization prior to the recent decision.[5]

The Supreme Court in *Gissel,* supra, countenanced the enforcement of good faith bargaining in card authorization cases by Board orders to bargain in addition to cease and desist orders.

■ N.L.R.B. v. Warren Co., Inc.[6] teaches that an employer ordered to bargain, after he has been found guilty by the Board of refusing to bargain, must bargain for a reasonable time.

■ There was one bargaining session for a portion of one day between the date of the enforcement decree, February 15, 1968, and the notice of the respondent dated July 1, 1968 that they terminated the bargaining by what they term a technical non-compliance based upon a good faith doubt. One bargaining session in a period of approximately four and one half months is hardly cognizable as good faith bargaining for a reasonable time.[7]

*Gissel* recognizes, "There is, after all, nothing permanent in a bargaining order, and if, after the effects of the employer's acts have worn off, the employees clearly desire to disavow the union, they can do so by filing a decertification petition." [8]

■ We recognize the fact that respondent herein filed a representation petition on April 30, 1968. However, as set forth above, the proper procedure would have been a decertification petition after the effects of the employer's acts had worn off. The effects had been determined by the decree of this court entered on February 15, 1968. A decertification petition filed by the employees would submit to the special expertise of the Board the substantial question whether or not those effects had worn off.

The order of the Board and the enforcement decree of this court is directed to respondent placing considerable responsibility upon them to participate in fruitful bargaining sessions.

In *Gissel* the Supreme Court said:

"We have long held that the Board is not limited to a cease-and-desist order in such cases, but has the authority to issue a bargaining order without first requiring the union to show that it has been able to maintain its majority status. * * * And we have held that the Board has the same authority even where it is clear that the union, which once had possession of cards from a majority of the employees, represents only a minority when the bargaining order is entered. Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1943). We see no reason now to withdraw this authority from the Board. If the Board could enter only a cease-and-desist order and direct an election or a rerun, it would in effect be rewarding the employer and allowing him 'to profit from [his] own wrongful refusal to bargain,' * * * while at the same time severely curtailing the employees' right freely to determine whether they desire a representative. The employer could continue to delay or disrupt the election processes and put off indefinitely his obligation to bargain; and any election held under these circumstances would not be likely to demonstrate the employees' true, undistorted desires." [9]

■ We, therefore, adjudge the respondent in civil contempt and order respondent to purge themselves of contempt by:

(a) Fully complying with and obeying the said Decree of the Court by, upon request, bargaining collectively in

---

5. *See* Furr's, Inc. v. N. L. R. B., 381 F.2d 562 (10th Cir.), *cert. denied,* 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105 (1967).

6. 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96 (1955).

7. *See* N. L. R. B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

8. 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed. 2d 547 (June 16, 1969).

9. *Id.* 395 U.S. at 610, 89 S.Ct. at 1938.

good faith with the Union as the exclusive representative of the Employer's employees in the appropriate unit, and if any understanding is reached, embody such understanding in a signed agreement.

(b) Immediately posting in conspicuous places including all places where notices to employees customarily are posted, for a period of sixty (60) consecutive days, an appropriate notice signed by the Employer's co-partners which states that the Employer has been adjudicated in civil contempt of Court for disobeying and refusing to comply with the Decree of this Court and that it will take the action in purgation ordered by the Court, and by maintaining such notices and a copy of the contempt order in clearly legible condition throughout such posting period, and assuring that they are not altered, defaced, or covered by any other material.

(c) Filing a sworn statement with the Clerk of this Court and a copy thereof with the Director of the Twenty-Seventh Region of the Board, and separately in writing within ten (10) days after the entry of the order of adjudication, showing what steps have been taken by the Employer to comply with the Court's directions, and filing sworn statements every thirty (30) days thereafter, with copies to the Regional Director, as to the manner of the Employer's bargaining with the Union, and making such further report as the Court may require.

(d) Paying to the Board fees and all costs and expenditures, including counsel fees, incurred by the Board in the investigation, preparation, presentation, and final disposition of this proceeding to adjudge the Employer in civil contempt.

If this decree is not complied with, the court, upon application, will take appropriate action.

It is so ordered.