10-3356-ag, 08-5165-ag, 08-4845-ag
NLRB v. Domsey Trading Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: October 20, 2009                    Decided: February 18, 2011)

Docket Nos. 10-3356-ag, 08-5165-ag, 08-4845-ag

NATIONAL LABOR RELATIONS BOARD,

*Petitioner-Cross-Respondent*,

v.

DOMSEY TRADING CORPORATION, DOMSEY FIBER CORPORATION and DOMSEY INTERNATIONAL and DOMSEY INTERNATIONAL SALES CORPORATION, a single employer,

*Respondent-Cross-Petitioner*.

KEARSE, WINTER, and POOLER, *Circuit Judges*.

The National Labor Relations Board ("NLRB" or "Board") seeks enforcement of two Supplemental Decisions and Orders of the Board against Domsey Trading Corporation, Domsey Fiber Corporation, Domsey International and Domsey International Sales Corporation ("Company" or "Domsey"), a single employer, pursuant to Section 10(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(e). *See Domsey Trading Corp.*, 351 NLRB No. 33 (2007); *Domsey Trading Corp.*, 355 NLRB No. 89 (2010). Domsey cross-petitions for review

1

of the Supplemental Decisions and Orders pursuant to Section 10(e) of the NLRA, 29 U.S.C.

§ 160(e). We agree that the Board erred when it failed to consider Domsey's objections to the

immigration-related evidentiary rulings of the Administrative Law Judge ("ALJ") that were

based on pre-*Hoffman* Second Circuit and NLRB case law. *See Hoffman Plastic Compounds,*

*Inc. v. NLRB*, 535 U.S. 137 (2002). We therefore deny the Board's application for enforcement,

grant Domsey's petition for review, and remand to the NLRB for further proceedings consistent

with this opinion.

JEFF BARHAM, LINDA DREEBEN, JOHN E. HIGGINS, JR., JOHN H. FERGUSON (ROBERT J. ENGLEHART, on the brief) for RONALD MEISBURG, General Counsel, National Labor Relations Board, Washington, D.C., *for Petitioner-Cross-Respondent*.

PAUL FRIEDMAN (DONALD GAMBURG and ANTHONY A. MINGIONE, on the brief), Blank Rome LLP, New York, New York, *for Respondent-Cross-Petitioner*.

POOLER, *Circuit Judge*:

The National Labor Relations Board ("NLRB" or "Board") seeks enforcement of two

Supplemental Decisions and Orders of the Board against Domsey Trading Corporation, Domsey

Fiber Corporation, Domsey International and Domsey International Sales Corporation

("Company" or "Domsey"), a single employer, pursuant to Section 10(e) of the National Labor

Relations Act ("NLRA"), 29 U.S.C. § 160(e). *See Domsey Trading Corp.*, 351 NLRB No. 33

(2007); *Domsey Trading Corp.*, 355 NLRB No. 89 (2010).[1] Domsey cross-petitions for review

---

[1] This case comes before this Court a second time, as the Board's two-member Second Supplemental Decision and Order, 353 NLRB No. 12 (2008), was initially dismissed pursuant to

of the Supplemental Decisions and Orders pursuant to Section 10(e) of the NLRA, 29 U.S.C. § 160(e).

We agree that the Board erred when it failed to consider Domsey's objections to the immigration-related evidentiary rulings of the Administrative Law Judge ("ALJ") (Michael A. Marcionese) that were based on pre-*Hoffman* Second Circuit and NLRB case law. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). We therefore deny the Board's application for enforcement, grant Domsey's petition for review, and remand to the NLRB for further proceedings consistent with this opinion.

## BACKGROUND

On January 30, 1990, approximately 200 of Domsey's workers went on strike, alleging that the Company had committed unfair labor practices, including firing several employees for attending union meetings. The strike ended on August 10, 1990, and the striking workers made an unconditional offer to return to work. Subsequently, the NLRB determined that Domsey had committed unfair labor practices before, during, and after the strike and ordered Domsey to reinstate the striking workers. *See Domsey Trading Corp.*, 310 NLRB No. 127 (1993). In a decision dated February 18, 1994, we granted the NLRB's application for enforcement. *See Domsey Trading Corp. v. NLRB*, 16 F.3d 517 (2d Cir. 1994) (Winter, *J.*).

On August 20, 1997, the NLRB issued a Compliance Specification and Notice of Hearing

the Supreme Court's decision in *New Process Steel, L.P. v. NLRB*, 130 S.Ct. 2635, 2010 WL 2400089 (2010). *NLRB v. Domsey Trading Corp.*, 08-4845-ag, 08-5165-ag (Jun. 30, 2010). Following this Court's order, a three-member panel of the Board issued a Second Supplemental Decision and Order on August 16, 2010, incorporating the two-member Decision of September 25, 2008. There is no substantive difference between the two Supplemental Decisions, and the parties re-submitted the case based upon their previously filed briefs and the oral argument held on October 20, 2009.

before an ALJ to determine the backpay owed by Domsey to the striking workers. In its Answer

to the Compliance Specification,[2] and again during the compliance hearing, Domsey raised the

issue of immigration status, arguing that undocumented immigrants were ineligible for backpay

under the NLRA pursuant to *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984). ALJ Marcionese,

following then-current NLRB and Second Circuit case law interpreting *Sure-Tan*, denied

Domsey's request to ask discriminatees questions about their immigration status during the

backpay period. Instead, the ALJ limited Domsey to asking whether the discriminatees'

immigration status affected their ability to find work during the backpay period, which he found

relevant to mitigation of damages. Later, concerned that Domsey was engaging in a "fishing

expedition," the ALJ limited this line of questioning to pre-IRCA[3] hires and post-IRCA hires who

Domsey had reason to believe did not have lawful immigration status. He reasoned that Domsey

should know the discriminatees' immigration status if they were hired post-IRCA because the

company was required by law to verify the information.

Later in the course of the compliance hearing, Domsey submitted a proffer of an

immigration expert the Company intended to call to rebut the testimony of some discriminatees

who had testified that they had work authorization during the backpay period and to cast doubt on

---

[2] In addition to raising immigration-related affirmative defenses for several specific discriminatees, Domsey raised this general affirmative defense in its Answer:

> [I]n the event that it is determined that any of the employees affected are undocumented aliens, the Answer is intended to include that such employee is not entitled to receive backpay for any period of time that they were not authorized to work in the United States.

[3] The Immigration Reform and Control Act of 1986 ("IRCA") made it illegal to knowingly hire undocumented immigrants and required employers to verify the immigration status of newly-hired employees. *See* 8 U.S.C. § 1324a.

4

the immigration status of other discriminatees who had not testified about their immigration status. The expert was prepared to testify that anomalies in some discriminatees' social security numbers and work authorization documents indicated that they had submitted fraudulent documents and did not have work authorization during the backpay period. Consistent with his previous immigration-related rulings, the ALJ rejected the proffer and prohibited the expert from testifying on the grounds that such testimony was irrelevant.

After fifty-three days of hearings conducted between October 27, 1997, and January 29, 1999, the ALJ issued a Supplemental Decision on October 4, 1999, awarding $1,075,614.30 in backpay to 202 discriminatees. In the decision, the ALJ reaffirmed his ruling that Domsey was not permitted to inquire into the discriminatees' immigration status during the backpay period. The Company filed its objections to the Supplemental Decision with the Board on December 15, 1999. Specifically, the Company objected to the ALJ's immigration-related evidentiary rulings "wherein [ALJ] Marcionese precluded [Domsey] from questioning the claimants about their ability to obtain work in this country legally." Domsey also objected to the ALJ's ruling excluding the testimony of its immigration expert.

After the ALJ issued his Supplemental Decision but before the NLRB had issued its decision, the Supreme Court decided *Hoffman*, 535 U.S. 137, which held that undocumented aliens are not entitled to backpay under the NLRA. In *Hoffman*, an employee who was fired because of his union activities admitted during the subsequent compliance hearing that he was undocumented and that he had provided fraudulent documents to his employer. While acknowledging that the Board enjoys broad discretion in fashioning remedies under the NLRA, the Supreme Court concluded that "allowing the Board to award backpay to illegal aliens would

5

unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA" by "encourag[ing] the successful evasion of apprehension by immigration authorities, condon[ing] prior violations of the immigration laws, and encourag[ing] future violations." *Id.* at 151. Thus, "[h]owever broad the Board's discretion to fashion remedies when dealing only with the NLRA," the Court concluded, "it is not so unbounded as to authorize this sort of an award." *Id.* at 151-52.

On September 30, 2007, more than five years after *Hoffman* was decided, the Board issued its Supplemental Decision and Order, 351 NLRB No. 33, affirming in part and reversing in part the ALJ's proposed decision. The Board held that *Hoffman* precluded an award of backpay to the four discriminatees who admitted to being undocumented during the backpay period. The Board also remanded with respect to six additional discriminatees because "issues ha[d] been raised" about their immigration status during the compliance hearing. However, the Board did not address Domsey's objection to the ALJ's ruling that it was not permitted to ask most discriminatees about their immigration status.[4]

On remand, the ALJ awarded backpay to two of the six individuals and made partial awards to two others. The General Counsel was unable to verify the immigration status of the remaining two individuals and withdrew their claims. Domsey then filed its objections to the proposed Second Supplemental Decision with the Board, "retain[ing] and restat[ing] its objections and exceptions to the ALJ's original . . . denial of Respondent's attempts to inquire as

---

[4] The Board did state in a footnote that "[t]he Respondent inquired not only to ascertain whether such status affected the search for work, but also to determine whether it affected eligibility for backpay. This was true for all discriminatees discussed in this section." This footnote did not, however, address Domsey's argument that for the vast majority of discriminatees, it was improperly prohibited from asking about immigration status.

to the [discriminatees'] immigration status and ability to work legally in the United States during the backpay period." On September 25, 2008, the Board adopted the ALJ's decision, failing again to address Domsey's objection to the ALJ's immigration-related evidentiary rulings. These petitions for enforcement and petition for review followed.

## DISCUSSION

The central issue in this case is an evidentiary one – namely, what limits the Board may place on the introduction and discovery of evidence that is relevant to one of an employer's affirmative defenses, in this case, immigration status. Congress has entrusted the NLRB with "wide discretion" to manage its internal processes, including the fashioning of evidentiary rules. *Carpenter Sprinkler Corp. v. NLRB*, 605 F.2d 60, 66 (2d Cir. 1979). We therefore review the Board's evidentiary rulings for abuse of discretion. *See id.*; *Wright Elec., Inc. v. NLRB*, 200 F.3d 1162, 1168 (8th Cir. 2000); *NLRB v. Kolkka*, 170 F.3d 937, 942 (9th Cir. 1999). As in other contexts, the Board "has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Snell Island SNF LLC v. NLRB*, 568 F.3d 410, 424 (2d Cir. 2009) (quoting *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008), *vacated on other grounds*, 130 S.Ct. 3498 (2010)).

### I.

As an initial matter, the Board argues on appeal that this Court lacks jurisdiction to consider Domsey's objections to the ALJ's immigration-related rulings because Domsey failed to preserve these objections before the Board. *See* 29 U.S.C. § 160(e); *Elec. Contractors, Inc. v. NLRB*, 245 F.3d 109, 123 (2d Cir. 2001). According to the Board, Domsey made specific

7

objections to the immigration status of only 12 discriminatees and the Board properly considered these objections. The Board contends that Domsey's "general" objection to the ALJ's immigration-related rulings is insufficient to preserve Domsey's arguments with respect to the other discriminatees' immigration status.

The Board misunderstands the nature of Domsey's objection. Domsey does not argue on appeal that each of the discriminatees was undocumented during the backpay period. Indeed, Domsey would be hard-pressed to make such an argument given that, in most cases, there is no direct evidence in the record concerning the discriminatees' immigration status. Instead, Domsey argues that it was prohibited from eliciting relevant testimony from discriminatees and was therefore unable to prove its affirmative defense; it seeks a remand so that it may be permitted to question discriminatees about their immigration status during the backpay period and to introduce the testimony of its immigration expert. In short, Domsey's "general" objection is actually a very specific objection to the ALJ's immigration-related evidentiary rulings. Thus defined, there is no question that Domsey preserved its objection. It reiterated this objection after the ALJ issued his proposed Second Supplemental Decision. The Board's argument that Domsey somehow waived this objection is without merit.[5]

## II.

Having concluded that Domsey has preserved its objection to the ALJ's immigration-related rulings, we further conclude that the Board abused its discretion by failing to remand the

---

[5] Similarly, the Board's argument that Domsey has waived any objection with respect to discriminatees not mentioned in Domsey's brief is unavailing. Domsey's reference to the questionable immigration status of certain discriminatees was intended to bolster Domsey's argument that it should have been permitted to ask about immigration status, and was not a direct challenge to the discriminatees' backpay awards.

case to the ALJ for further proceedings consistent with *Hoffman*. The ruling that Domsey could not ask discriminatees questions concerning their immigration status was premised on pre-*Hoffman* Second Circuit and NLRB case law that had concluded that immigration status was irrelevant to backpay eligibility under the NLRA. *See NLRB v. A.P.R.A. Fuel Oil Buyers Group, Inc.*, 134 F.3d 50 (2d Cir. 1997); *Hoffman Plastic Compounds, Inc.*, 326 NLRB No. 86 (1998); *see also Hoffman Plastic Compounds, Inc., v. NLRB*, 535 U.S. 137 (2002) (abrogating both cases).[6] When Domsey later renewed its objection to the ruling, the ALJ again emphasized that he was following current NLRB law and that he was not going to "revise [his] ruling based on speculation that the Supreme Court may find that there is a split in the Circuits and that the issue needs to be addressed at that level."

After *Hoffman*, it is now clear that undocumented immigrants are ineligible for backpay under the NLRA and, therefore, that immigration status is relevant to the question of backpay eligibility. While relevance is certainly not the only consideration when deciding what evidence is admissible, an affirmative defense would be illusory if all evidence that could be used to prove it were categorically excluded. Of course, the ALJ did not have the benefit of *Hoffman* when he made his immigration-related rulings. The Board's decision, however, was issued five years after *Hoffman*, and we are perplexed as to why the Board chose to ignore Domsey's objection to the

---

[6] The ALJ explained his ruling as follows:

> [R]ather than burden the record with questioning of all of these witnesses for some potential future decision that may come down from the Court of Appeals or the Supreme Court, . . . I'm going to follow the Board's decision and essentially I'm going to rule that any questions with respect to whether or not they had documents to allow them to work during the back pay period is irrelevant under the Board's current view of the law in terms of alien's rights to back pay during that period of time.

ALJ's evidentiary rulings, even after acknowledging that *Hoffman* precludes a backpay award to undocumented immigrants. **[SPA-181]** This omission ratified the ALJ's ruling, which was based on an outdated and erroneous view of the law. We conclude that this was an abuse of discretion.

**III.**

The Board makes one further argument in support of its application for enforcement that we must consider – that, *Hoffman* notwithstanding, the Board may place some limits on immigration-related questioning in compliance proceedings. The only limits the Board may place on cross-examination are the usual limits the presider may place on cross-examination. Such a limit may, for instance, require an employer, before embarking on a cross-examination of a substantial number of claimants, to proffer a reason why its IRCA-required verification of immigration status with regard to a particular claimant now seems questionable, or in error.

While *Hoffman* was not an evidentiary decision, post-*Hoffman*, the immigration status of discriminatees has become relevant to the issue of whether backpay may be awarded. Although it is by no means a simple issue, we find that employers may question discriminatees about their immigration status, while also underscoring the Board's legitimate interest in fashioning rules that preserve the integrity of its proceedings.

In sum, we find that employers may cross-examine backpay applicants with regard to their immigration status, and leave it to the Board to fashion evidentiary rules consistent with *Hoffman*. We also conclude that the ALJ erred in not permitting Domsey to ask discriminatees direct questions about their immigration status during the backpay period. Moreover, the ALJ should have permitted Domsey to introduce the testimony of its immigration expert in order to meet its burden. We remand to the Board so that it may correct these errors, and trust that this case, which

10

concerns unfair labor practices committed almost twenty years ago, can be brought to its well-deserved conclusion.

## CONCLUSION

We have considered all of the parties' contentions in support of their respective petitions and, except as indicated above, have found them to be without merit. For the foregoing reasons, we GRANT Domsey's petition for review, DENY the Board's application for enforcement, and REMAND to the Board for further proceedings consistent with this opinion.