Palma v. NLRB

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2012

(Argued:  February 6, 2013                    Decided:   July 10, 2013)

Docket No. 12-1199

_____

CHRISTIAN PALMA, ANTONIO GONZALEZ, FRANCISCO JAVIER JOYA,
JOSE ANTONIO QUINTUÑA, JOSE ARMANDO SAX-GUTIERREZ,

                                                    Petitioners,

- v. -

NATIONAL LABOR RELATIONS BOARD,

                                                    Respondent.
_____

Before:  KEARSE and LOHIER, Circuit Judges, and KAPLAN, District   Judge[*].

Petition for review of orders of the National Labor Relations Board principally

denying, on the basis of Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), backpay

to undocumented alien petitioners who had been discharged by their employer in violation of the

National Labor Relations Act.  See 357 N.L.R.B. No. 47 (Aug. 9, 2011).

Petition denied in part and granted in part.

_____

[*]    Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of
       New York, sitting by designation.

MATTHEW J. GINSBURG, Washington, D.C. (James B. Coppess, AFL-CIO, Washington, D.C., Marielena Hincapié, Linton Joaquin, Josh Stehlik, National Immigration Law Center, Los Angeles, California, Emily Tulli, National Immigration Law Center, Washington, D.C., on the brief), for Petitioners.

FRED B. JACOB, Washington, D.C. (Lafe E. Solomon, Acting General Counsel, Celeste J. Mattina, Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, Usha Dheenan, Supervisory Attorney, MacKenzie Fillow, Attorney, National Labor Relations Board, Washington, D.C., on the brief), for Respondent.

KEARSE, Circuit Judge:

Petitioners Christian Palma et al. petition for review of a Supplemental Decision and Order of respondent National Labor Relations Board ("NLRB" or the "Board") following compliance proceedings with respect to the remedies to be ordered for violations of the National Labor Relations Act ("NLRA") by their former employer, Mezonos Maven Bakery, Inc. ("Mezonos"). It having been conceded, for purposes of the compliance proceedings, that petitioners were undocumented aliens, the Board ruled that awards of backpay to the petitioners are precluded by the Supreme Court's decision in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002) ("Hoffman Plastic"), interpreting the Immigration Reform and Control Act of 1986 ("IRCA"), and the Board therefore refused to approve an order of the administrative law judge ("ALJ") recommending that petitioners be awarded backpay. Petitioners contend (1) that the Board erred in interpreting the majority opinion in Hoffman Plastic to apply to aliens such as petitioners, who had not procured their jobs through the use of fraudulent documentation, and (2) that the Board erred in rejecting, without explanation, the "ALJ's reinstatement order" recommending that Mezonos be required to offer petitioners conditional

2

reinstatement (Petitioners' reply brief on Petition for Review at 17). With respect to petitioners' latter contention, the Board argues that the absence of a Board order for, or discussion of, conditional reinstatement is not error because the ALJ's order did not include a recommendation for that relief. For the reasons that follow, we deny the petition insofar as it seeks awards of backpay; we grant the petition to the extent that it seeks a remand for the Board to consider issues relating to the request for conditional reinstatement.

## I. BACKGROUND

Most of the facts are no longer in dispute. Petitioners and several others (collectively, the "discriminatees") are former employees of Mezonos; they engaged in protected concerted labor activity, for which they were unlawfully discharged in 2003. The merits of the unfair labor practice charge alleging that the discharges violated the NLRA were resolved by a stipulation and order, on which a judgment was entered by this Court in 2005 ("2005 Judgment" or "Judgment"); the relief to be ordered for the violations was to be conclusively determined after later proceedings. The Judgment provided, to the extent pertinent here, that Mezonos was to "make [petitioners] whole" with respect to "the amount of backpay due, if any," 2005 Judgment ¶ 2(b) (emphasis added), and that Mezonos was to offer petitioners

> unconditional reinstatement . . . except that [Mezonos] may avail itself of a compliance proceeding and therein attempt to establish that one or more of the alleged discriminatees is not entitled to an unconditional offer of reinstatement,

id. ¶ 2(a) (emphasis added).

A.  The Compliance Proceedings and the ALJ's Decision

In the ensuing compliance proceedings, commenced by an NLRB Compliance Specification and Notice of Hearing ("Compliance Specification") that sought backpay and unconditional offers of reinstatement, Mezonos contended that Hoffman Plastic precluded awards of backpay and/or reinstatement in this case because petitioners were not legally authorized to work in, or to be present in, the United States.  Mezonos asserted that it had in fact offered in 2003 to reinstate petitioners if they produced documentation sufficient to comply with IRCA and that none of them had presented proper documentation.

From the beginning of the evidentiary hearing before the ALJ, Mezonos sought to examine the discriminatees as to their immigration status.  Counsel for the discriminatees maintained that Mezonos should be prohibited from questioning them on that subject; and the first such witness refused to answer any questions touching on his immigration status, invoking his Fifth Amendment privilege against self-incrimination (see Compliance Hearing Transcript, Aug. 8, 2006 ("Tr."), at 69-70).  The ALJ ruled the questioning appropriate, and he adjourned the hearing in order to request, pursuant to § 102.31(c) of the Board's Rules and Regulations, authorization to require the discriminatees to answer such questions.  Before a response to that request was received, however, the NLRB General Counsel was allowed to foreclose such questioning by conceding, for purposes of the compliance proceedings, that the discriminatees were undocumented aliens:

> "[F]or the purposes of this proceeding, and only this proceeding, the General Counsel will proceed on the assumption that the discriminatees are undocumented.  We have decided not to contest the issue of [the discriminatees' immigration] status in this proceeding for the purposes of expediting this matter."

ALJ Order Granting Motion To Amend Compliance Specification and Withdrawal of the Section

102.31(c) Request, dated June 2, 2006, at 1 (quoting motion of the General Counsel). Accordingly, the compliance hearing continued on the assumption that the discriminatees were undocumented aliens. The ALJ inquired whether that assumption altered the General Counsel's "request for a remedy" (Tr. 501), and he was informed that the requested relief was modified to include conditional, rather than unconditional, reinstatement (see id. at 501-02).

Following the conclusion of the hearing, the ALJ issued his decision recommending that petitioners be awarded backpay. See ALJ Supplemental Decision dated November 1, 2006 ("ALJ Decision"). The ALJ began by stating that

> [t]he general question presented is <u>whether undocumented workers who are not legally authorized to work or be present in the United States</u> but are nevertheless covered and protected by the National Labor Relations Act (Act) <u>are entitled to a backpay remedy</u>.

> The specific [question] to be decided is <u>whether undocumented workers who have not engaged in fraud or criminal activity in violation of . . . IRCA[] in obtaining or continuing their employment are entitled to backpay</u> where their employer, in violation of that statute, hired and retained them knowing that they were undocumented.

ALJ Decision at 1 (emphases added). The ALJ answered both questions in the affirmative, finding this case materially different from <u>Hoffman Plastic</u> because the alien in <u>Hoffman Plastic</u> had violated IRCA by procuring his employment by presenting the employer with fraudulent documents, and the employer was unaware of the fraud, see id. at 14.

The ALJ discredited Mezonos's president's testimony that petitioners had been asked to produce IRCA-required documentation before they were hired, and he found that "regardless of whether the employees were asked for documentation and did not produce it, [Mezonos] violated IRCA by hiring them and continuing to employ them without receiving the proper documentation." ALJ Decision at 4. The ALJ also credited the testimony of the petitioners over that of Mezonos's

president with respect to the events after petitioners' discharges, finding that Mezonos had not made valid offers to reinstate petitioners if they presented proper documentation. See id. at 9.

The ALJ noted that the Compliance Specification alleged that the backpay period for petitioners began on the date of their discharge and continued to run in the absence of a valid offer of reinstatement, see id. at 4, and that the General Counsel argued that no valid offer of reinstatement had been made, see id. The ALJ noted that the Board in the past had ordered an employer who had hired employees, knowing they were undocumented aliens, to offer them immediate and full reinstatement if, within a reasonable time, they provided documentation satisfying IRCA; and he found that Hoffman Plastic did not preclude such an order of conditional reinstatement. See ALJ Decision at 9. The ALJ stated that the limited concession that petitioners here were undocumented "d[id] not answer the question concerning [Mezonos's] obligation, first to validly offer reinstatement and then to leave those offers open for a reasonable time within which they must present proof of documentation. Those obligations have not been met." Id. And because "[a]n employer's offer of reinstatement must be specific and unequivocal in order to toll backpay," id., and "valid offers of reinstatement have not yet been made to the [discriminatees]," the ALJ found that "backpay has not been tolled," id. at 11.

Quoting extensively from the dissent in Hoffman Plastic, the ALJ concluded that "the backpay remedy is necessary" to make "labor law enforcement credible," ALJ Decision at 16 (internal quotation marks omitted), and is "effective in deterring future conduct," without which, "employers have more, not less incentive to hire undocumented workers," id. at 17.

Having concluded that Mezonos did not make valid offers of reinstatement to the discriminatees sufficient to toll its obligation to pay backpay, the ALJ proceeded to calculate the

6

amount of backpay due each discriminatee and entered an order accordingly. See id. at 19-26. The text of his "recommended Order," id. at 26 n.15, was as follows:

ORDER

The Respondent, Mezonos Maven Bakery, Inc., its officers, agents, successors, and assigns, shall make the employees named in the attached Appendix whole by paying to them the sums set forth in the column entitled Net Backpay for each of the employees, with interest on such amounts to be computed in accordance with New Horizons for the Retarded, 283 NLRB 1173 (1987), minus tax withholdings required by Federal and State laws.

(Order dated November 1, 2006 ("ALJ Order").) The ALJ Decision noted that in the absence of timely exceptions, "the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the [Board's] Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes." ALJ Decision at 26 n.15.

B. The Decision of the Board

In a Supplemental Decision and Order dated August 9, 2011, and reported at 357 N.L.R.B. No. 47 ("NLRB Decision"), the Board declined to adopt the ALJ Order. The Board did not disturb the ALJ's findings that Mezonos violated IRCA by hiring and continuing to employ petitioners without obtaining the required documentation, and that petitioners had not violated IRCA because they had not obtained their jobs by presenting fraudulent documents. See NLRB Decision at 1-2. However, the Board concluded that the holding in Hoffman Plastic nonetheless precluded awards of backpay to petitioners as undocumented aliens.

Although the employee at issue in Hoffman Plastic had violated IRCA and his employer had not, the Board stated that Hoffman Plastic's "holding is categorically worded" with "no distinction based on the identity of the IRCA violator," id. at 2, and concluded that that decision

7

"broadly precludes backpay awards to undocumented workers regardless of whether it is they or their employer who has violated IRCA," id.; see id. at 4 ("The [Hoffman Plastic] Court worded its holding in IRCA violator-neutral terms, it invoked IRCA violator-neutral policy grounds, and it otherwise made clear that which party violated IRCA was immaterial to its holding."). The Board noted that "[r]egardless of which party violates the law, the result is an unlawful employment relationship," NLRB Decision at 2, and found its interpretation consistent with Hoffman Plastic's view that any "employment relationship between an employer and an undocumented worker" contravened "explicit congressional policies," id. (internal quotation marks omitted). The Board concluded that an award of backpay would "trench upon 'policies underlying IRCA' by legitimizing that relationship" and that such a remedy was therefore "beyond the limits of the Board's remedial discretion." Id. at 3 (quoting Hoffman Plastic, 535 U.S. at 149).

Having determined that petitioners cannot be awarded backpay, the Board reversed the ALJ Order and dismissed the General Counsel's Compliance Specification. The Board did not discuss whether Mezonos should be required to offer to reinstate petitioners if they would provide IRCA-compliant documentation.

Petitioners moved for reconsideration of the Board's ruling denying them backpay; their motion did not mention any issue of reinstatement. The Board denied the motion in an order dated November 3, 2011. This petition for review followed.

8

II. DISCUSSION

In support of their petition for review, petitioners contend that the Board erred in its interpretation of Hoffman Plastic as categorically barring backpay for undocumented workers, and they argue that both that interpretation and the Board's failure to explain its decision to deny conditional reinstatement require a remand. The Board opposes the petition on the grounds that its interpretation of Hoffman Plastic was correct and that its silence on the subject of reinstatement was appropriate, given that the ALJ Order had not recommended conditional reinstatement and no party argued to the Board that the ALJ erroneously failed to recommend that relief.

We conclude that the Board's interpretation of Hoffman Plastic was correct; but we remand this matter to the Board for consideration of issues relating to petitioners' requested remedy of conditional reinstatement.

A.  Hoffman Plastic, IRCA, and Backpay

In Hoffman Plastic, the employer ("Hoffman") had hired an alien, Jose Castro, who presented to Hoffman documents that appeared to verify his authorization to work in the United States but that, unbeknownst to Hoffman, were fraudulent.  After Hoffman violated the NLRA by discharging Castro and others for union-organizing activities, the Board "ordered that Hoffman . . . cease and desist from further violations of the NLRA . . . and . . . offer reinstatement and backpay to the . . . affected employees." Hoffman Plastic, 535 U.S. at 140-41. Despite the admission by Castro at a subsequent compliance hearing that he had obtained his job by using false documents and was not authorized to work in the United States, the Board eventually ordered that Hoffman pay Castro

9

backpay. See id. at 141-42. The Supreme Court reversed that decision, noting that when "the Board's chosen remedy trenches upon a federal statute or policy outside the Board's competence to administer, the Board's remedy may be required to yield," id. at 147.

The Hoffman Plastic Court began its opinion by stating as follows:

> The National Labor Relations Board (Board) awarded backpay to an undocumented alien who has never been legally authorized to work in the United States. We hold that such relief is foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA).

Hoffman Plastic, 535 U.S. at 140.

In exploring the interplay between the NLRA and IRCA, the Court described at some length its decision in Sure-Tan, Inc. v. NLRB, 467 U.S. 883 (1984), which had been decided two years before the enactment of IRCA and had dealt with the "potential conflict between the NLRA and federal immigration policy, as then expressed in the Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101 et seq.," Hoffman Plastic, 535 U.S. at 144. In Sure-Tan,

> [t]wo companies had unlawfully reported alien-employees to the Immigration and Naturalization Service (INS) in retaliation for union activity. Rather than face INS sanction, the employees voluntarily departed to Mexico. The Board investigated and found the companies acted in violation of §§ 8(a)(1) and (3) of the NLRA. The Board's ensuing order directed the companies to reinstate the affected workers and pay them six months' backpay.
>
> We affirmed the Board's determination that the NLRA applied to undocumented workers, reasoning that the immigration laws "as presently written" expressed only a "'peripheral concern'" with the employment of illegal aliens. 467 U.S., at 892 (quoting De Canas v. Bica, 424 U.S. 351, 360 (1976)). "For whatever reason," Congress had not "made it a separate criminal offense" for employers to hire an illegal alien, or for an illegal alien "to accept employment after entering this country illegally." Sure-Tan, [467 U.S.] at 892-893. Therefore, we found "no reason to conclude that application of the NLRA to employment practices affecting such aliens would necessarily conflict with the terms of the INA." 467 U.S., at 893.

10

With respect to the Board's selection of remedies, however, we found its authority limited by federal immigration policy. See id., at 903 ("In devising remedies for unfair labor practices, the Board is obliged to take into account another 'equally important Congressional objective'" (quoting Southern S.S. Co. [v. NLRB, 316 U.S. 31,] 47 [(1942)])). For example, the Board was prohibited from effectively rewarding a violation of the immigration laws by reinstating workers not authorized to reenter the United States. Sure-Tan, 467 U.S., at 903. Thus, to avoid "a potential conflict with the INA," the Board's reinstatement order had to be conditioned upon proof of "the employees' legal reentry." Ibid. "Similarly," with respect to backpay, we stated: "[T]he employees must be deemed 'unavailable' for work (and the accrual of backpay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States." Ibid. "[I]n light of the practical workings of the immigration laws," such remedial limitations were appropriate even if they led to "[t]he probable unavailability of the [NLRA's] more effective remedies." Id., at 904.

Hoffman Plastic, 535 U.S. at 144-45 (emphases added).

The Hoffman Plastic Court noted that "[t]he parties and the lower courts focus much of their attention on Sure-Tan, particularly its express limitation of backpay to aliens 'lawfully entitled to be present and employed in the United States.' 467 U.S., at 903." Hoffman Plastic, 535 U.S. at 146 (emphasis added). It noted that

[a]ll agree that as a matter of plain language, this limitation forecloses the award of backpay to Castro. Castro was never lawfully entitled to be present or employed in the United States, and thus, under the plain language of Sure-Tan, he has no right to claim backpay.

Hoffman Plastic, 535 U.S. at 146 (emphasis added).

Turning to the more recent restrictions imposed by IRCA, the Hoffman Plastic Court noted that the line of cases of which Sure-Tan was part

established that where the Board's chosen remedy trenches upon a federal statute or policy outside the Board's competence to administer, the Board's remedy may be required to yield. Whether or not this was the situation at the time of Sure-Tan, it is precisely the situation today. In 1986, two years after Sure-Tan, Congress enacted IRCA, a comprehensive scheme prohibiting the employment of illegal aliens in the United States. § 101(a)(1), 100 Stat. 3360,

11

8 U.S.C. § 1324a. As we have previously noted, IRCA "forcefully" made combating the employment of illegal aliens central to "[t]he policy of immigration law." INS v. National Center for Immigrants' Rights, Inc., 502 U.S. 183, 194, and n. 8 (1991). It did so by establishing an extensive "employment verification system," § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3). This verification system is critical to the IRCA regime. To enforce it, IRCA mandates that employers verify the identity and eligibility of all new hires by examining specified documents before they begin work. § 1324a(b). If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired. § 1324a(a)(1).

Similarly, if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status. § 1324a(a)(2). Employers who violate IRCA are punished by civil fines, § 1324a(e)(4)(A), and may be subject to criminal prosecution, § 1324a(f)(1). IRCA also makes it a crime for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents. § 1324c(a). It thus prohibits aliens from using or attempting to use "any forged, counterfeit, altered, or falsely made document" or "any document lawfully issued to or with respect to a person other than the possessor" for purposes of obtaining employment in the United States. §§ 1324c(a)(1)-(3). Aliens who use or attempt to use such documents are subject to fines and criminal prosecution. 18 U.S.C. § 1546(b). There is no dispute that Castro's use of false documents to obtain employment with Hoffman violated these provisions.

Hoffman Plastic, 535 U.S. at 147-48 (footnote omitted) (emphases added). While IRCA does not provide that an alien who is unauthorized to work commits a crime merely by obtaining employment without presenting fraudulent documents, the Hoffman Plastic Court observed that

[u]nder the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations,

id. at 148 (emphasis added). The Supreme Court continued:

12

What matters here, and what sinks . . . the Board's claims, is that Congress has expressly made it criminally punishable for an alien to obtain employment with false documents. There is no reason to think that Congress nonetheless intended to permit backpay where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities.

Id. at 149.

Although petitioners urge us to distinguish the present case from Hoffman Plastic because in that case Castro himself had violated IRCA, whereas the petitioners here did not present fraudulent documents, the Hoffman Plastic Court's discussion of the direct conflicts between IRCA and awards of backpay is equally applicable to aliens who did not gain their jobs through such fraud but who are simply present in the United States unlawfully. The Court pointed out that awarding backpay would "not only trivialize[] the immigration laws," but would "also condone[] and encourage[] future violations":

[H]ad the INS detained Castro, or had Castro obeyed the law and departed to Mexico, Castro would have lost his right to backpay. . . . Castro thus qualifies for the Board's award only by remaining inside the United States illegally. . . . Similarly, Castro cannot mitigate damages, a duty our cases require, . . . without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers.

Id. at 150-51. And

allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations. However broad the Board's discretion to fashion remedies when dealing only with the NLRA, it is not so unbounded as to authorize this sort of an award.

Id. at 151-52.

These same concerns exist here in light of the General Counsel's concession for purposes of this case that petitioners are undocumented. Given petitioners' presence in the United States without documentation, their seeking damages stemming from an unlawful employment relationship, and--assuming there has been no change in their undocumented status--their obtaining new unlawful employment following their terminations by Mezonos, awards of backpay would have the same ill-advised propensity discussed in Hoffman Plastic for condoning prior violations of the immigration laws and encouraging future violations.

The fact that Congress chose in IRCA not to impose criminal sanctions on undocumented aliens simply for working without authorization does not in any way suggest that Congress meant to allow the Board to encourage undocumented aliens to work by awarding them backpay; and this Court has previously interpreted Hoffman Plastic as foreclosing such awards, see, e.g., NLRB v. Domsey Trading Corp., 636 F.3d 33, 38 (2d Cir. 2011) ("After Hoffman, it is now clear that undocumented immigrants are ineligible for backpay under the NLRA . . . ."). We are not persuaded to reach the opposite conclusion by cases such as Madeira v. Affordable Housing Foundation, Inc., 469 F.3d 219 (2d Cir. 2006), which ruled that IRCA did not preempt awards to undocumented aliens as compensation for personal injuries caused by an employer's negligence or misconduct, see id. at 239-49. IRCA's focus is on violations of the immigration laws, not on workplace safety.

Finally, although petitioners have argued that awards of backpay are needed in order to discourage employers from hiring undocumented workers, the Hoffman Plastic Court noted that sanctions other than the requirement of backpay are available as deterrents.

14

Lack of authority to award backpay does not mean that the employer gets off scot-free. The Board here has already imposed other significant sanctions against Hoffman . . . . These include orders that Hoffman cease and desist its violations of the NLRA, and that it conspicuously post a notice to employees setting forth their rights under the NLRA and detailing its prior unfair practices. . . . Hoffman will be subject to contempt proceedings should it fail to comply with these orders. NLRB v. Warren Co., 350 U.S. 107, 112-113 (1955) (Congress gave the Board civil contempt power to enforce compliance with the Board's orders). We have deemed such "traditional remedies" sufficient to effectuate national labor policy regardless of whether the "spur and catalyst" of backpay accompanies them. Sure-Tan, 467 U.S., at 904. See also id., at 904, n. 13 ("This threat of contempt sanctions . . . provides a significant deterrent against future violations of the [NLRA]").

Hoffman Plastic, 353 U.S. at 152. Further, as the Supreme Court observed in a subsequent case, IRCA's requirements that employers verify the employment authorization status of prospective employees and not continue to employ unauthorized workers "are enforced through criminal penalties and an escalating series of civil penalties tied to the number of times an employer has violated the provisions. See 8 U.S.C. §§ 1324a(e)(4), (f); 8 CFR § 274a.10." Arizona v. United States, 132 S. Ct. 2492, 2504 (2012) (emphases added). As to the perceived need for additional deterrents, the Hoffman Plastic Court ended by stating,

[a]s we concluded in Sure-Tan, "in light of the practical workings of the immigration laws," any "perceived deficienc[y] in the NLRA's existing remedial arsenal" must be "addressed by congressional action," not the courts. Id., at 904. In light of IRCA, this statement is even truer today.

353 U.S. at 152.

IRCA's purpose was "to control illegal immigration to the U.S.," both by deterring employers "from hiring unauthorized aliens" and by "deter[ring] aliens from entering illegally or violating their status in search of employment." H.R. Rep. No. 99-628(I), at 45-46, reprinted in 1986 U.S. Code Cong. & Admin. News 5649, 5449-50 ("USCCAN"). As to aliens who did not present

15

fraudulent documents but who in fact are in the United States illegally or are not authorized to work here, we see

> no reason to think that Congress nonetheless intended to permit backpay where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities,

Hoffman Plastic, 535 U.S. at 149. We conclude that the Board did not err by interpreting Hoffman Plastic to require the denial of backpay to petitioners.

B.  Conditional Reinstatement

Finally, petitioners argue that the ALJ properly "order[ed] conditional reinstatement" to their jobs with Mezonos (Petitioners' brief in support of Petition for Review at 6), and that the Board improperly "failed to provide any explanation for its decision to dismiss the ALJ's reinstatement order" (Petitioners' reply brief at 17). The Board argues that it had no need to discuss conditional reinstatement because the ALJ Order did not recommend that relief and petitioners did not file exceptions to its omission. (See NLRB brief in opposition to Petition for Review at 21-27.) The Board ends, however, by requesting, "if th[is] Court believes that the Board must address the appropriateness of reinstatement," that we remand to "the Board . . . to consider it in the first instance." (Id. at 27.) In light of the record as a whole, we will order such a remand.

We do not understand the Board to have ruled that petitioners were not entitled to offers of reinstatement conditioned upon their presentation to Mezonos of IRCA-compliant documentation to show that they are lawfully present in, and authorized to work in, the United States. The Board's decision simply did not address that question and was instead devoted entirely to the

16

matter of whether Hoffman Plastic precluded the ALJ-recommended awards to petitioners, as undocumented aliens, of backpay.

Nor did the ALJ Order recommend that Mezonos be required to tender to petitioners offers of reinstatement. As described in Part I.A. above, the ALJ Decision contained extensive discussion of Mezonos's contention that offers of reinstatement had been made to the discriminatees in 2003; the ALJ found that Mezonos had an obligation to make valid reinstatement offers, and he found that "[t]hose obligations have not been met," ALJ Decision at 9. Further, after the General Counsel's limited concession that the discriminatees were undocumented, the ALJ expressly inquired whether that concession changed the General Counsel's "request for a remedy" (Tr. 501), and he was informed that the request was modified to seek conditional reinstatement (see id. at 501-02).

Given that inquiry and response, as well as the ALJ's finding that Mezonos had not fulfilled its obligation to make valid offers of reinstatement, we find it surprising that the ALJ Order-- quoted in Part I.A. above in its entirety--made no mention of reinstatement. It may be that the parties simply assumed from the findings made in the ALJ Decision that the ALJ had in fact granted petitioners' request for conditional reinstatement. Petitioners did not file any exceptions to the ALJ Order, as they would have been expected to do had they noticed that order's lack of a recommendation for conditional reinstatement. And Mezonos--which should have been pleased about the absence of any order recommending reinstatement--filed exceptions that repeatedly challenged the ALJ's views on reinstatement. (See, e.g., Exceptions letter from Mezonos's counsel to the NLRB dated December 26, 2006, ¶ 5 ("tak[ing] exception to the Judge's position . . . that the Hoffman Plastic . . . case did not disturb . . . conditional reinstatement" as a possible remedy); id. ¶ 7 ("tak[ing] exception to the . . .

17

Judge['s] state[ment] that the obligations of [Mezonos] to validly offer reinstatement and to leave those offers open for a reasonable time within which the employees must present proof of documentation has not been met.").) Indeed, the Board acknowledges that "Mezonos excepted to the judge's discussion ( . . . in the context of its offers of reinstatement) of conditional reinstatement and argued that it was not an appropriate remedy after Hoffman." (NLRB brief in opposition to Petition for Review at 24 ("not" emphasized in original; other emphasis added).)

As to the validity of Mezonos's contention that conditional reinstatement is not an appropriate remedy after Hoffman Plastic, we are skeptical. The Hoffman Plastic Court noted that Sure-Tan had held that

> the Board was prohibited from effectively rewarding a violation of the immigration laws by reinstating workers not authorized to reenter the United States[, and that] . . . . to avoid a potential conflict with the INA, the Board's reinstatement order had to be conditioned upon proof of the employees' legal reentry.

Hoffman Plastic, 535 U.S. at 145 (internal quotation marks omitted) (emphasis ours). And there apparently was no need for the Hoffman Plastic Court to consider whether the Board could order conditional reinstatement, given that "[w]hen the Board learned that [Castro] was an undocumented alien, it denied [him] reinstatement," Hoffman Plastic Compounds, Inc. v. NLRB, 237 F.3d 639, 640 (D.C. Cir. 2001) (en banc), and the Supreme Court observed that

> [n]either Castro nor the Board's General Counsel offered any evidence that Castro had applied or intended to apply for legal authorization to work in the United States,

535 U.S. at 141. Thus, although the Hoffman Plastic Court did not directly deal with an issue of reinstatement, its discussion plainly did not foreclose relief in the nature of an order for reinstatement conditioned upon an employee's submission of documentation as required by IRCA.

18

In sum, given (a) that the ALJ Order did not recommend conditional reinstatement despite the findings in the ALJ Decision that reinstatement offers would be appropriate and that Mezonos had not met its obligation to make such offers, and despite an explicit request by the General Counsel for an order requiring offers of conditional reinstatement, (b) that petitioners did not file any exceptions with the Board despite the failure of the ALJ Order to recommend conditional reinstatement, and (c) that the Board did not consider whether an order requiring offers of conditional reinstatement would be appropriate despite Mezonos's explicit argument that the decision in Hoffman Plastic foreclosed any orders for conditional reinstatement, we conclude that this matter should be remanded to the Board for consideration, in the first instance, of issues relating to that form of relief-- including issues of waiver, estoppel, and appropriateness.

CONCLUSION

We have considered all of petitioners' arguments in support of their contention that the Board erred in refusing to order awards of backpay and have found them to be without merit. To that extent, the petition for review is denied. The petition for review is granted to the extent that the matter is remanded to the Board for consideration of issues relating to petitioners' request for conditional reinstatement.